Present:   Chief Judge Decker, Judges Beales, Huff, O'Brien, AtLee, Malveaux, Athey, Fulton,
              Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins and White
Argued at Richmond, Virginia

PATRICK AUSTIN CAROLINO

                                                                      OPINION BY
v.        Record No. 1270-21-1                          JUDGE FRANK K. FRIEDMAN
                                                                   NOVEMBER 28, 2023
COMMONWEALTH OF VIRGINIA

UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge

Richard C. Clark, Senior Assistant Public Defender, for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


       This case involves an alleged physical attack at the end of a somewhat stormy romantic

relationship.  The appeal focuses on whether a prior alleged incident of physical abuse earlier in the

relationship was admissible and relevant to shed light on the later attack.

       Patrick Austin Carolino was convicted in the Virginia Beach Circuit Court on one count of

strangulation, in violation of Code § 18.2-51.6.  On appeal, Carolino argues that the trial court erred

in admitting evidence pertaining to a prior bad act that occurred between him and the victim, and he

asserts that the evidence was insufficient to prove the offense.  A panel majority of this Court

reversed the trial court's ruling regarding the admissibility of the contested evidence and remanded

Carolino's conviction.  We then granted a petition for rehearing en banc at the Commonwealth's

request.  Upon rehearing en banc, we again reverse the trial court's evidentiary ruling and remand

the case for retrial, if the Commonwealth be so advised.

BACKGROUND

The Commonwealth's Evidence

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

So viewed, the evidence established that Carolino and Ford were in a romantic relationship beginning in April 2018 and ending in May 2019. Carolino and Ford lived together from May 2018 until February 2019. On April 15, 2019, the two went out to dinner and began to argue. After dinner, Ford drove to the condo that Carolino shared with a friend, Robert Mendez, and they both went to Carolino's bedroom. Ford was on the bed as they continued to argue, and she told Carolino she felt hopeless about their relationship. She claims Carolino got onto the bed with her and put his hand around her neck. With his other hand, Carolino pressed onto the back of her head "pushing it into the ground." Ford struggled to breathe and asked Carolino to stop. She thought she might pass out or die. As Carolino continued to apply pressure to Ford's neck, he asked, "do you see what it feels like to die?" Ford could not breathe for approximately fifteen to twenty-five seconds. She felt pressure in her head and had spotted vision, but she did not lose consciousness.

After the incident, Ford stayed with Carolino overnight and did not end their relationship. She did not report the incident to the police until a month later. Ford explained that she delayed reporting the strangulation to police because she still cared for Carolino. But she also "was scared to report anything."

The morning after the incident, Ford noticed that she had popped blood vessels in her eye and photographed her injuries. These photos were later introduced into evidence at trial. Ford also noticed that her neck was tender and her throat was sore. She had difficulty swallowing, and her voice was affected. Ford went to work and discussed the incident with her manager, who testified that on the day after the incident Ford was "visibly distraught" and her eyes were red "like the blood vessels had been popped."

Mendez was Carolino's roommate between February and April of 2019. Mendez testified that, at the time of the incident, Ford's eyes "looked as if they were allergies or bloodshot, maybe a broken blood vessel." When he asked her about it, she told him she had allergies. Mendez also noted that Carolino told him, around this general time frame, that Ford would know how to respond in self-defense if she were ever placed in a chokehold.[1]

Ford ultimately disclosed the choking incident to Carolino's probation officer on May 17, 2019. She had already called the officer several times after the break-up to report Carolino for violating his probation generally; however, after she met the probation officer in person, Ford reported the choking incident.

Jennifer Knowlton, a sexual assault nurse examiner with Chesapeake Forensic Specialists, was qualified as an expert in "the signs and symptoms of strangulation." Knowlton testified that some of the typical signs and symptoms of strangulation are soreness in the neck area, pain or difficulty swallowing, and petechia and subconjunctival hemorrhages in the eyes. On cross-examination, Knowlton acknowledged that other things could cause such symptoms, such as reactions to medications, excessive coughing, and rubbing one's eyes to alleviate allergies. Knowlton did not personally treat Ford for her injuries.

---

[1] The couple did go to jiu-jitsu classes together where Carolino "showed her things" and he noted "physical situation[s]" arise during such training.

<u>Carolino's Version of Events and Attack on Ford's Credibility</u>

After the Commonwealth rested its case, Carolino made a motion to strike, arguing that Ford's testimony was unreliable. Carolino pointed out that Ford waited a month before she reported the incident, and he asserted that she was biased because she was upset that he was seeing other women. He also noted inconsistencies in her testimony. The trial court denied the motion to strike.

Carolino testified that on the night of the offense he and Ford argued about the fact that he was seeing other women. He explained that when they returned to his condo, she "begged" to come inside with him. Carolino stated that Ford spent the night, but he said they did not fight. Indeed, he testified that they had sex in the evening and again in the morning and then did yoga together. Carolino denied strangling Ford or putting her in a chokehold to teach her self-defense. Carolino said Ford continued to contact him after that night and repeatedly tried to interfere with his other relationships. Carolino admitted that he had two prior felony convictions.

<u>The Whipping Incident</u>

Carolino testified in his own defense and denied that the strangulation incident occurred. On cross-examination, he was asked:

> Q     Ms. Ford -- have you ever -- you said you didn't choke her. Have you ever been physical with her?
>
> A     Aggressively physical, no. Sexually, sure. Yes.
>
> Q     Okay. Never been aggressively physical with her?

The Commonwealth then cross-examined Carolino about a prior incident between him and Ford. Carolino explained that on a prior occasion, Ford had asked to be whipped as part of a sexual act. He stated: "I've never aggressively assaulted [Ford]. I've never -- I've never done anything to [her] that she didn't ask me to do or did not want me to do."

The Commonwealth then called Ford as a rebuttal witness. Over Carolino's strenuous objection, Ford testified that Carolino had beaten her with a belt in the summer of 2018 after

learning that she had slept with someone else.  Ford admitted multiple times that she told a detective that she "allowed" or "gave" "permission" to Carolino to administer the whipping.

> Q       And didn't you tell the officer that you sort of gave him permission [for the whipping]?
>
> A       I did tell her that.
>
> . . . .
>
> THE COURT:  You have to - you have to speak up.
>
> THE WITNESS:  Yes.  I told her that I had allowed him to do it.

However, upon questioning from the trial judge, she also testified that she did not, in fact, consent to the beating in her own mind.  Instead, Ford explained that she resigned herself to Carolino's insistence that he wanted to hurt her for her infidelity.  Ford stated, "I did allow him.  I was intimidated by him because he had expressed to me repeatedly that he wanted to hurt me.  And I just . . . didn't want to have to wait and see when he was going to do it."  There was no indication that Ford reported the whipping to anyone when it occurred in 2018.

The Commonwealth argued the extrinsic rebuttal evidence was admissible to impeach Carolino's credibility.  In admitting the evidence the trial court stated: "He's just testified that he's never -- he's never been physical with her. . . .  I'm going to allow it.  I'll overrule the objection."  Over Carolino's objection, the trial court also allowed the Commonwealth to introduce graphic photographs of injuries Ford sustained in the whipping incident.[2]

The Trial Judge, as Factfinder, Convicts Carolino of Strangulation and Places Significant Emphasis on the Disputed Evidence in Reaching His Decision

After the defense rested, Carolino renewed his motion to strike and presented closing argument, again emphasizing that Ford waited over a month to report the choking incident to police

---

[2] The photographs were admitted as Commonwealth's Exhibit 2 and show large, dark bruises on Ford's buttocks and legs.

and maintaining that she was not a credible witness. The trial court convicted Carolino of strangulation. In so ruling, the trial court specifically relied upon the prior bad act evidence as a central basis for the conviction. The court noted that this evidence "really had an impact on the court as far as credibility goes."

Carolino Appeals

Carolino appealed his conviction, and in an unpublished decision, a panel majority of this Court concluded that the trial court erred in admitting collateral propensity evidence of the prior whipping incident. The case was reversed and remanded for a potential new trial.

The Commonwealth then sought a rehearing en banc by this Court. That rehearing was granted, and we now again conclude that the evidence was erroneously admitted.

ANALYSIS

I. The Whipping Evidence was Inadmissible Solely to Impeach Carolino's Credibility and This was the Only Basis Upon Which the Collateral Evidence was Offered in the Trial Court

A. Standard of Review

Carolino asserts on appeal that the trial court erred both in allowing Ford to testify about the 2018 incident and in admitting photographs of her injuries from that beating. He contends that the evidence was irrelevant and inadmissible and that no exception to the rule against propensity evidence applied.

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). To the extent an evidentiary ruling involves interpreting a statute or rule of court, such rulings are reviewed de novo. *Brown v. Commonwealth*, 68 Va. App. 746, 792 (2018). "Of course, an error of law, 'by definition,' constitutes an abuse of discretion." *Bennett v.*

*Commonwealth*, 69 Va. App. 475, 485 (2018) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

"As a general rule, evidence that shows or tends to show crimes or other bad acts committed by the accused is incompetent and inadmissible for the purpose of proving that the accused committed or likely committed the particular crime charged." *Lafon v. Commonwealth*, 17 Va. App. 411, 417 (1993); *see* Va. R. Evid. 2:404(b). "The policy underlying the exclusion of such evidence protects the accused against unfair prejudice resulting from the consideration of prior criminal conduct in determining guilt." *Sutphin v. Commonwealth*, 1 Va. App. 241, 245 (1985). This general rule, however, "must sometimes yield to society's interest in the truth-finding process, and numerous exceptions allow evidence of prior misconduct whenever the legitimate probative value outweighs the incidental prejudice to the accused." *Dunbar v. Commonwealth*, 29 Va. App. 387, 390 (1999). Notwithstanding the general rule, evidence of prior bad acts is admissible:

> (1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a *modus operandi*; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part.

*Lafon*, 17 Va. App. at 417 (quoting *Sutphin*, 1 Va. App. at 245-46). This list "is not exclusive." *Lambert v. Commonwealth*, 70 Va. App. 740, 750 (2019).

Before prior bad acts evidence is admitted, the proponent of the evidence must show that "the legitimate probative value" of the evidence "outweighs the incidental prejudice to the accused." *Pierce v. Commonwealth*, 50 Va. App. 609, 615 (2007) (quoting *Woodfin v. Commonwealth*, 236 Va. 89, 95 (1988)).

B. *McGowan v. Commonwealth*, 274 Va. 689 (2007), and Virginia Precedent
Regarding Impeaching the Accused's Credibility

Evidence must be relevant to be admissible. Va. R. Evid. 2:402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. Here, the Commonwealth, over Carolino's objection, introduced evidence of the whipping at trial for the sole stated purpose of impugning Carolino's credibility after he stated on cross-examination that he was never "aggressively physical" toward Ford. The prosecution then called Ford in rebuttal to discuss the incident. Photos of Ford's extensive bruising resulting from the beating were also admitted.

On appeal Carolino asserts that, under *McGowan*, the Commonwealth's evidence regarding the whipping was collateral and improperly admitted. The Commonwealth counters that the evidence was properly accepted, but principally argues that the ruling to admit the evidence was "right for a different reason" than the reason provided at trial. *See Vandyke v. Commonwealth*, 71 Va. App. 723, 731 (2020).

*McGowan* directly addresses whether a circuit court can admit prior bad acts evidence for the sole purpose of impugning the accused's credibility in response to an issue raised by the Commonwealth on cross-examination. In *McGowan*, a drug offense prosecution, the defendant testified that at the time of the charged drug sale she "wouldn't know crack cocaine if [she] saw it." 274 Va. at 693 (alteration in original). To impeach the defendant's credibility, the Commonwealth sought to introduce evidence that she had *subsequently* been arrested in possession of crack cocaine. *Id.* The Supreme Court found that the improper infusion of collateral "other crimes" evidence required reversal of the conviction. *Id.* at 696.

The Court reasoned that collateral facts cannot be admitted into evidence and that "[t]he test as to whether a matter is material or collateral, in the matter of impeachment of a witness, is whether . . . the cross-examining party would be entitled to prove it in support of his case." *Id.* at

695 (alterations in original) (quoting *Stottlemyer v. Ghramm*, 268 Va. 7, 12 (2004)). The Court further cautioned: "Evidence that relates to a separate offense for which the defendant is not currently standing trial, and which cannot be used for any purpose other than for impeachment of the defendant, is certainly collateral to the main issue." *Id.*

The *McGowan* Court then reiterated that when a defendant is cross-examined on collateral matters, the prosecution must accept the answer provided and cannot introduce extrinsic evidence to contradict the accused:

> Under our jurisprudence . . . , the cross-examiner is bound by the answer given, and cannot introduce any extrinsic evidence to otherwise contradict the witness. Thus, "the answer of the witness will be conclusive; [she] cannot be asked as to any collateral independent fact merely with a view to contradict [her] afterwards by calling another witness."

*Id.* (second and third alterations in original) (citations omitted). The Court confirmed that cross-examination regarding the collateral issue is permissible:

> [I]t is well settled that, "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." Clearly, a criminal defendant such as McGowan cannot expect to make a misleading statement to the jury without also "open[ing] the door to cross-examination for the purpose of attacking [her] credibility."

*Id.* (second, third, and fourth alterations in original) (first quoting *Harris v. New York*, 401 U.S. 222, 225 (1971); and then quoting *Santmier v. Commonwealth*, 217 Va. 318, 319-20 (1976)).

Under this governing law, we are left to determine whether the trial court properly admitted the propensity evidence relating to the 2018 whipping, and, if not, whether introduction of this evidence requires reversal.

- 9 -

C. Extrinsic Evidence of the Prior Whipping Incident was Impermissibly Admitted as a Collateral Matter in the Trial Court

In examining the ruling below, we confront a situation where no basis was provided by the Commonwealth in the trial court for why the whipping evidence might have been admissible in its case-in-chief. For example, the trial court did not address or resolve whether Ford's reportings of the whipping and alleged strangulation were similar, or whether the 2018 whipping was probative of the 2019 strangulation in any way.[3] The testimony—and the extrinsic photographs—were offered and admitted purely for impeachment purposes. After the Commonwealth argued specifically that Carolino's credibility is "at the very core" of the case, the following colloquy occurred prior to the court admitting the photographs to discredit his statement on cross-examination that he was not "aggressively physical" with Ford:

> THE COURT: He said he had never been physical with her and I don't -- and these pictures apparently --
>
> . . . I haven't seen them yet. Is it your representation that this is evidence of him being physical with her?
>
> [THE COMMONWEALTH]: It is, Judge.
>
> THE COURT: Okay. I'll receive them.

After viewing the photos, the trial court, in convicting Carolino, specifically commented that this whipping evidence (and particularly the photos) "really had an impact on the court as far as credibility goes."[4]

This case closely mirrors *McGowan*. We are guided by the Supreme Court's admonition that bad acts evidence which relates to a separate incident for which the defendant is not currently

---

[3] To the extent the Commonwealth argues consent is highly relevant, the court did not resolve whether the whipping was consensual or non-consensual either.

[4] *See Deville v. Commonwealth*, 47 Va. App. 754, 757 (2006) (when a factfinder tells us its basis for ruling, we "know with certitude" and "need not hypothesize").

standing trial and which was not introduced "for any purpose other than for impeachment of the defendant, is certainly collateral to the main issue." *McGowan*, 274 Va. at 695. This category of evidence is precisely what was admitted in the Commonwealth's case-in-chief. *Simpson v. Commonwealth*, 13 Va. App. 604, 608 (1992). Further, when impeaching on a collateral matter, "the cross-examiner is bound by the answer given, and cannot introduce any extrinsic evidence to otherwise contradict the witness." *McGowan*, 274 Va. at 695. Here, Carolino's challenged testimony was impeached both by testimony from a rebuttal witness and by graphic, extrinsic photographs. Moreover, the trial court stated that this improper evidence was essentially the tipping point in reaching its ultimate decision.

Under these circumstances, we find that the trial court ran afoul of *McGowan* in admitting this collateral propensity evidence for the sole purpose of attacking Carolino's credibility. This, however, does not end our inquiry. We next address the Commonwealth's contention that we should uphold the admission of the evidence—and therefore the conviction—on alternate grounds.

II. The Commonwealth's Reliance on Alternative Grounds

A. The Limits of the "Right for the Wrong Reason" Doctrine

On appeal, the Commonwealth asserts that because the evidence of the whipping could be deemed relevant under exceptions to the prohibition against propensity evidence, this Court is free to employ such grounds to uphold the admission of the evidence and affirm the verdict.[5] "The

---

[5] The Commonwealth espouses the "right for a different reason" doctrine as a means of preserving the verdict. This theory is applicable in cases where "the appellate court 'express[es] no view on the correctness of the lower court's rationale.'" *Vandyke*, 71 Va. App. at 731 (alteration in original) (quoting *Rickman v. Commonwealth*, 294 Va. 531, 542 (2017)). Here, we have addressed the lower court's rationale—specifically, its finding that the propensity evidence was admissible to impeach Carolino's credibility on collateral matters. Because this ruling is inconsistent with *McGowan*, the sole basis given for admitting the disputed evidence was erroneous; therefore, we apply the "right for the wrong reason" test, which is closely aligned to the Commonwealth's argument. *See Perry v. Commonwealth*, 280 Va. 572, 580 (2010); *Haynes v. Haggerty*, 291 Va. 301, 305 (2016).

- 11 -

'right result for the wrong reason' doctrine has been a part of the law of Virginia for well over a century." *Spinner v. Commonwealth*, 297 Va. 384, 391 (2019) (citing *Schultz v. Schultz*, 51 Va. (10 Gratt.) 358, 384 (1853)). "We have long said that '[w]e do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground.'" *Banks v. Commonwealth*, 280 Va. 612, 617 (2010) (alteration in original) (quoting *Eason v. Eason*, 204 Va. 347, 352 (1963)).[6]

There are limits, however, to an appellate court's ability to apply alternate grounds to uphold a trial court's ruling. In *Banks*, the Supreme Court explained that the right for the wrong reason doctrine can be applied where the newly-raised grounds were not asserted below—as long as the record fully supports the alternate ground:

> [W]e must clarify what it means to say that the record supports an alternative ground for affirmance. The record supports an alternative ground when it reflects that all evidence necessary to that ground was before the circuit court. *And if that evidence was conflicting, then the record must show how the circuit court resolved the dispute—for example, it must demonstrate how contradicting testimony was weighed or credited.*

*Id*. (emphasis added). Additionally,

> when considering whether the "right result for the wrong reason" doctrine should be applied, the standard of review is whether the record demonstrates that all evidence necessary to the alternative ground for affirmance was before the circuit court and, if that evidence was conflicting, how it resolved the dispute, or weighed or credited contradicting testimony.

*Id*. at 618; *see also Perry v. Commonwealth*, 280 Va. 572, 582 (2010) ("An appellate court is not limited to the grounds offered by the trial court in support of its decision, and it is 'entitled to

---

[6] *Banks* focused on whether police officers' seizure of Banks' jacket—which contained a gun—was a Fourth Amendment violation. The answer hinged on whether Banks had consented to the seizure—a question which was unresolved below. This Court found that there was sufficient evidence in the record to find consent. The Supreme Court reversed, noting that appellate courts are "in no position" to make disputed factual findings that were unresolved below. 280 Va. at 618.

affirm the court's judgment on alternate grounds, *if such grounds are apparent from the record.*'" (quoting *MM v. Sch. Dist. Of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002))); *Vandyke*, 71 Va. App. at 731-32 (in order for an appellate court to affirm a lower court's ruling on an alternate ground, "the record must show how the trial court resolved any dispute").[7]

B.  In this Case Unresolved Factual Determinations and Unresolved Rulings Weigh Against Application of the Right for the Wrong Reason Doctrine

On this factual record, we decline to apply the right for the wrong reason doctrine.  There are factual questions and evidentiary determinations that were unresolved below which make application of the right for the wrong reason doctrine problematic here.

1.  Factual Determinations as to the Probative Value of the Whipping Incident and the Balancing of the Probative Value and Prejudice of the Whipping Evidence Remain Unresolved

The Commonwealth tenders a broad array of theories for why the whipping incident might have been relevant in its case-in-chief if these explanations had been raised in the trial court, ranging from showing intent, consent, motive, or state of mind, to proving "the dysfunction" of the couple's relationship or explaining why Ford "did what she did."  The Commonwealth similarly argues the whipping evidence demonstrates Carolino's "conduct or attitude" toward the victim, as well as the nature of their relationship.  *See Ortiz v. Commonwealth*, 276 Va. 705, 714 (2008); *Morse v. Commonwealth*, 17 Va. App. 627, 632 (1994) (evidence of prior acts of sexual violence was

---

[7] The parameters of the right for the wrong reason doctrine have shifted over the years. In the past, our precedent held that an alternate ground could not be raised on appeal unless it had specifically been put at issue below. *See Whitehead v. Commonwealth*, 278 Va. 105, 114 (2009) (limiting application of the doctrine to "cases in which the party seeking affirmance" argued the "right ground" in the trial court).  However, *Perry*, 280 Va. at 580, and *Banks*, 280 Va. at 617, limited *Whitehead* and eliminated this requirement.  The current test for affirming alternate grounds focuses on whether the record fully supports the newly-advanced reason without additional factual resolution.

admissible to show "the conduct and feeling of the accused toward the victim and the prior relations between the parties" in a prosecution for marital sexual assault).[8]

The bad acts cases relied upon by the Commonwealth differ markedly from the present scenario in important respects. For example, the propensity cases cited by the Commonwealth all involve trial courts analyzing the admissibility of prior bad acts evidence under one (or more) of the delineated exceptions to the rule against propensity evidence. Here, by contrast, the trial court erroneously ruled that the whipping evidence was admissible solely to impeach Carolino's credibility. *Simpson*, 13 Va. App. at 608. The trial court did not consider any other grounds for admissibility. Indeed, the trial court did not make any finding that the evidence of the whipping had any independent relevance other than with respect to credibility.[9] Given this posture, the trial court, when confronted with propensity evidence, never balanced the probative value of the whipping incident against its prejudicial impact with respect to any of the newly-raised grounds advocated by the Commonwealth. *See Pierce*, 50 Va. App. at 615 (noting that to admit bad acts evidence, the legitimate probative value of the evidence must exceed its incidental prejudice to the defendant).

The Commonwealth principally relies on two cases in arguing for the admissibility of the whipping evidence as an exception to the rule against propensity evidence: *Kenner v.*

---

[8] *See also Burnette v. Commonwealth*, 60 Va. App. 462, 480 (2012) (evidence of a baby's prior injuries was relevant and admissible to show the defendant's "prior relationship with and feelings toward" the infant); *Conley v. Commonwealth*, 74 Va. App. 658, 672 (2022) (video evidence of prior incidents of sexual abuse was admissible to show the defendant's "conduct and attitude" toward the victim). These cases do not, however, suggest that any incident revealing "dysfunction" in a couple's long-term relationship automatically becomes admissible as "background information."

[9] The Commonwealth essentially recognizes this in its brief: "The trial court did not specifically rule that the prior bad act was admissible for the reasons asserted, but its ruling can be affirmed under the 'right result, different reason' doctrine." Commonwealth's En Banc Br. at 13 fn. 4.

*Commonwealth*, 299 Va. 414 (2021), and *Conley v. Commonwealth*, 74 Va. App. 658 (2022).

These cases aptly illustrate the importance of trial court involvement in evidentiary gatekeeping.

Both cases focus on the competing probative value and prejudice factors which a trial court must

consider before admitting propensity evidence. The *Kenner* defendant was charged with the sexual

abuse of a child. The Commonwealth presented evidence that the defendant watched pornographic

videos while abusing the victim and that the abuse often mirrored what occurred on the videos. 299

Va. at 426-27. The trial court did *not* allow the prejudicial videos to be played to the jury, but

permitted the Commonwealth to introduce the sexualized titles the defendant had placed on the

tapes to show the defendant's attitude to the child and to prove motive, method, and elements of the

offense. *Id.* at 420.

Our Supreme Court affirmed this ruling, finding that the titles were relevant to show the

defendant's "inappropriate sexualized attitude toward children." *Id.* at 426. The trial court

"balanced the probative value of the evidence against its prejudicial effect" and properly concluded

that only the titles, rather than the images themselves, should be admitted into evidence. *Id.* at 427.

The trial court's balancing allowed for the introduction of relevant evidence, while ensuring that the

probative value of the evidence outweighed its prejudicial effect on the defendant. *Id.*

In *Conley*, the victim discovered multiple videos of her ex-husband performing non-

consensual sexual acts upon her as she slept. 74 Va. App. at 668. The evidence suggested the

victim was drugged during these incidents. She also recalled an occasion when her ex-husband

gave her a "foaming beer," which she discovered had sediment in the bottom. *Id.* at 669. The trial

court ruled that the evidence regarding the "foaming beer" constituted a prior bad act and that the

Commonwealth could only refer to "sediment" in the beer, not to a "pill." *Id.* This Court found that

the trial court's ruling—that referring to the sediment as a pill would be overly prejudicial, but that

the probative value of the presence of "sediment" was not outweighed by its prejudicial effect—

was not an abuse of discretion.  *Id.* at 674.

Thus, both *Kenner* and *Conley* aptly illustrate the rigorous analysis and balancing a trial

court must undertake to fulfill its gatekeeper function.  No such analysis is present here.  The trial

court did not pass judgment on any of the Commonwealth's newly-minted arguments regarding

grounds for admissibility; nor did it weigh the prejudicial effect of the whipping evidence against its

probative value as to these alternate grounds.  Further, it was not given a chance to limit the

prejudice associated with the whipping evidence by restricting how much of the evidence, if any,

was admissible—as occurred in *Kenner* and *Conley*.[10]

a. <u>Probative Value, Prejudice, and Admission of the Graphic Photos</u>

The record's failure to show how the probative value/prejudice paradigm was analyzed

below is particularly problematic with respect to admission of the graphic photos depicting the

extensive bruising Ford suffered from the whipping.  On appeal, the Commonwealth offers very

little explanation for why the post-whipping photos of Ford's injuries should have been admissible

on alternate grounds other than to suggest the photos corroborate that the incident occurred.  The

"happening" of the beating does not require corroboration, however, as no one disputes that it

occurred.

---

[10] A trial court, of course, is given broad discretion with respect to the admission of evidence. *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017); *Boone v. Commonwealth*, 63 Va. App. 383, 388 (2014).  "Under this deferential standard, a 'trial judge's ruling will not be reversed simply because an appellate court disagrees;' only in those cases where 'reasonable jurists could not differ' has an abuse of discretion occurred." *Campos*, 67 Va. App. at 702 (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).  A trial court, however, has no discretion to admit clearly inadmissible evidence. *See Norfolk & Western Ry. Co. v. Puryear*, 250 Va. 559, 563 (1995).  An appellate court cannot uphold discretion that was not exercised; here, the trial court simply made no analysis of any of the alternate grounds raised on appeal—and the solitary ground utilized by the trial court for admission was improper.

The photographs depicting Ford's injuries are disturbing, jarring, and inflammatory.[11] The trial court did not balance the photos' probative value against their prejudicial effect for any of the grounds now posited by the Commonwealth. The absence of any balancing analysis or factual findings resolving the competing versions of the underlying whipping incident makes application of the right for the wrong reason doctrine problematic here. *Banks*, 280 Va. at 617-18; *Perry*, 280 Va. at 579.

It was the trial court's responsibility to determine whether the unfair prejudicial impact of the graphic photos substantially outweighed any probative value the evidence may have had, and whether the bad acts evidence should have been excluded. *See*, *e.g., Lambert*, 70 Va. App. at 756 (affirming the exclusion of evidence where it would have minimal probative value yet significant potential for confusion and undue prejudice); *Pryor v. Commonwealth*, 276 Va. 312, 316-17 (2008) (affirming the exclusion of evidence where its prejudicial impact greatly exceeds its probative value); *Old Chief v. United States*, 519 U.S. 172, 191 (1997) (reversing conviction based on improper admission of bad acts evidence where "the risk of unfair prejudice did substantially outweigh the discounted probative value" of the evidence).

The "right for the wrong reason" doctrine should only be applied when "all evidence necessary to" the alternative ground for affirmance was before the trial court, and the record shows how the trial court resolved any conflicts in that evidence. *Banks*, 280 Va. at 617; *see also Perry*, 280 Va. at 579; *Vandyke*, 71 Va. App. at 732. The record does *not* reveal any proper grounds on

---

[11] Prior bad acts evidence will often be prejudicial to the defendant, but the test is whether the evidence is unfairly so. *Lee v. Spoden*, 290 Va. 235, 251-52 (2015). "'[U]nfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Id.* at 251. Notably, here, the evidence also was introduced in violation of *McGowan* in a setting where the Commonwealth should have been bound to accept Carolino's answers on cross-examination. 274 Va. at 695 (rejecting tactic of impugning accused's cross-examination testimony on collateral matters with extrinsic evidence).

which the photos were deemed to be probative by the trial court. Nor does the record show how the trial court resolved the probative value/prejudice conflict here with respect to the photos.

### b. Probative Value, Prejudice, and Admission of Ford's Testimony Regarding the Whipping

The same issues arise with respect to Ford's rebuttal testimony regarding the whipping. The trial court, again, did not address the probative value of Ford's testimony regarding the whipping or whether such probative value outweighed its prejudice to Carolino with respect to any of the new grounds advanced by the Commonwealth.

Recognizing that Ford's credibility was hotly contested, the Commonwealth suggests that the whipping incident is relevant to show why Ford "did what she did." The Commonwealth claims that the whipping evidence showed why Ford willingly spent the night with Carolino following the alleged strangulation, and why she initially claimed that her eyes were red not from the assault but from allergies. The Commonwealth asserts that such evidence—explaining "the victim's state of mind"—is admissible as an exception to the prohibition of prior bad acts evidence. *See Morse*, 17 Va. App. at 632. The prosecution similarly argues that the delayed reporting of the whipping sheds light on Ford's delayed reporting of the alleged strangulation.

However, before the whipping that occurred in the summer of 2018 can be relevant to the alleged April 2019 strangulation, some evidentiary links between the events must be established.[12] Certainly Ford's reporting as to the two incidents was quite different in various respects. For

---

[12] Subject to certain exceptions, "evidence implicating an accused in other crimes unrelated to the charged offense is inadmissible because it may confuse the issues being tried and cause undue prejudice to the defendant." *Guill v. Commonwealth*, 255 Va. 134, 138 (1998). "[I]t is improper to use evidence that a defendant has committed another crime when it has 'no connection with the one under investigation.'" *Id.* at 140 (quoting *Barber v. Commonwealth*, 182 Va. 858, 868 (1944)). However, such evidence may be admissible "when there is 'a causal relation or logical and natural connection between the two acts, or they . . . form parts of one transaction.'" *Id.* (alteration in original) (quoting *Barber*, 182 Va. at 868). Thus, the whipping evidence must be relevant to the charged strangulation in some meaningful or probative manner. *See id.* at 140-41 (evidence of other acts must address a matter genuinely in dispute).

- 18 -

example, Ford immediately reported the alleged strangulation to her employer the following day, although she delayed reporting it to the police and Carolino's probation officer. By contrast, there is no evidence she discussed the whipping with anyone at the time it occurred. She never made claims that the strangulation was consensual, but she did tell police the whipping was consensual.[13] The two incidents are not particularly similar, except to suggest Carolino's alleged propensity to aggression. Did the trial court find the two incidents related for reporting purposes? We do not know.

The Commonwealth now also argues that the whipping incident was relevant to show Carolino's motive and intent. The Commonwealth suggests, for example, that the whipping occurred over Ford's past infidelity and that it is reasonable to infer that the alleged strangulation—occurring approximately one year later—was spurred by the same motive. Nothing in the record, however, indicates that Carolino continued to harbor anger over the prior infidelity; instead, the record shows that at the time of the present charged conduct, Carolino was seeing other women and was not interested in an exclusive relationship.[14] Again, the trial court did not resolve these newly-minted factual contentions raised by the Commonwealth on appeal.

In short, with respect to the newly-raised grounds of consent, state of mind, motive, reporting, or relationship of the parties, the record fails to reveal how the factual questions

---

[13] Carolino never asserted that Ford consented to the alleged strangulation; he claimed it never happened at all. And while Ford stated that the whipping was "allowed" and "permitted," she also stated that she did not consent to it in her own mind. There is, however, no indication in the record that she conveyed any reservations about the whipping to Carolino.

[14] While there are significant differences in Ford's general reporting history of the whipping and alleged strangulation, the Commonwealth suggests that the whipping evidence explains Ford's hesitation in reporting the strangulation to the police. Even without the whipping evidence, Ford explained her delayed reporting of the strangulation to legal authorities as attributable to her lingering feelings for Carolino and her fear of reprisal. Notably, shortly after the relationship ended, she did not hesitate to call Carolino's probation officer multiple times to report alleged violations and, later, to meet the probation officer in person to report the strangulation.

underlying these issues were resolved or weighted. *See Knight v. Commonwealth*, 61 Va. App. 297, 309 (2012) (noting that when trial court confines its ruling to a single, erroneous ground, "further factual resolution" may be needed before an alternate ground can be applied). Even if the whipping testimony were found to be marginally probative as to one or more of these alternative grounds, no balancing of any probative value was made versus its prejudicial effect on the defense. In this case, such prejudice would be significant. Again, we leave the weighing of these unresolved issues to the trial court on remand.

2. The Trial Court is the Proper Forum to Make Initial Evidentiary
Rulings in a Disputed Factual Setting

The Commonwealth argues that appellate courts are free, in proper circumstances, to usurp the trial court's gatekeeper function with respect to admitting evidence; but, we decline the invitation here. Our Supreme Court has emphasized on multiple occasions that the trial court is the preferred forum for weighing and balancing evidence.

> In testing the credibility and weight to be ascribed to the evidence, we must give trial courts and juries the wide discretion to which a living record, as distinguished from a printed record, logically entitles them. The living record contains many guideposts to the truth which are not in the printed record; not having seen [the witnesses] ourselves, we should give great weight to the conclusions of those who have seen and heard them.

*Dean v. Morris*, 287 Va. 531, 537 (2014) (quoting *Fred C. Walker Agency, Inc. v. Lucas*, 215 Va. 535, 541 (1975)); *see also Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (the Court of Appeals should not have engaged in its own balancing of probative value against prejudicial effect, but should have remanded to the trial court to perform this balancing); *Banks*, 280 Va. at 617 (noting that appellate courts are "in no position" to make disputed factual findings that were unresolved below); *Meade v. Commonwealth*, 74 Va. App. 796, 805 (2022) (deference to the trial court stems in part from the trial court's "opportunity to observe the testimony and demeanor of all witnesses" (quoting *Lopez v. Commonwealth*, 73 Va. App. 70, 81 (2021))); *Harris v. Woodrum*,

3 Va. App. 428, 433 (1986) (We long have recognized that a "trial judge who views the witnesses as their testimony is given is in the better position to evaluate the evidence than an appellate court which reviews only a cold record.").

To be sure, there are routinely instances where appellate courts uphold verdicts on alternate grounds despite errors below. *See Perry*, 280 Va. at 580; *Freeman v. Commonwealth*, 65 Va. App. 407, 426 (2015); *Haynes v. Haggerty*, 291 Va. 301, 306-07 (2016). Virginia courts have observed on multiple occasions that the right for the wrong reason doctrine is particularly well-suited to approving alternate grounds based on legal premises. *Miller & Rhoads Bldg., LLC v. City of Richmond*, 292 Va. 537, 542-43 (2016); *Rives v. Commonwealth*, 284 Va. 1, 3 (2012). Thus, there are instances where alleged factual uncertainties may not be determinative or "material" in a setting where a legal basis for the alternate ground trumps any factual consideration. *See Rickman v. Commonwealth*, 294 Va. 531, 541-42 (2017) (language of statute resolves matter without analysis of trial court's waiver finding). Where the factual record is clear as to an independent basis for affirming the judgment, appellate courts are also free to resolve the case on that factual basis. *See Peters v. Commonwealth*, 72 Va. App. 378, 388-89 (2020) (trial court erroneously found defendant's refusal to put his hands behind his back established flight; however, other undisputed evidence on a clear factual record established "fleeing"); *Driscoll v. Commonwealth*, 14 Va. App. 449, 452 (1992) (record clearly revealed prior convictions to establish habitual offender status). Similarly, where propensity evidence is improperly admitted but the evidence in support of the verdict is overwhelming, we are charged to uphold the verdict. *See Rose v. Commonwealth*, 270 Va. 3 (2005); *Pierce v. Commonwealth*, 50 Va. App. 609 (2007); Code § 8.01-678. But this case simply does not fit any of these criteria.

Here, the factual record is muddled—and a credibility ruling and, ultimately, the verdict itself turned on evidence which was inadmissible for the collateral purpose for which it was

considered. *McGowan*, 274 Va. at 695-96. We know the error affected the verdict because the factfinder specifically acknowledged it. To affirm the tainted verdict, the Commonwealth asks us to reconstruct the evidentiary analysis from scratch with respect to alternate grounds—on a record where the most basic findings as to the probative value and prejudice of the whipping evidence were never addressed. The right for the wrong reason doctrine should not be applied where "the record on appeal does not *fully* support the trial court's decision." *Obregon v. Commonwealth*, 75 Va. App. 582, 590-91 (2022) (emphasis added); *Knight*, 61 Va. App. at 309 (rejecting right for the wrong reason analysis where additional factfinding is required).

As the Supreme Court observed in *Sateren v. Montgomery Ward and Co., Inc.*, 234 Va. 303, 306 (1987), where the contested verdict is based on erroneous principles, the appellate court may decline to utilize the right for the wrong reason doctrine where we believe the victim of the error is "entitled to another day in court and to have his case tried according to correct principles, win or lose." This is such a case. Finding that additional factual resolution is required and that erroneous legal principles influenced the verdict below, we decline to uphold Carolino's conviction on alternate grounds.[15]

---

[15] The dissent suggests that our ruling improperly expands *Banks* and *Perry* and requires a party to raise alternative grounds in the trial court in order for this Court to consider the alternate grounds as a basis for upholding the verdict on appeal. Not so. The test is *not* whether the alternate grounds were raised or decided below; the test is whether the record is sufficiently complete to permit the appellate court to address the alternate grounds. *See* fn. 7, *supra*. We do not believe the record is sufficiently complete here. Again, part of that "completeness" analysis requires that where there is conflicting evidence, and that evidence is material to the alternate ground, the record must show how the court resolved it. *Banks*, 280 Va. at 617-18. This does not mean, on a complete record, that an appellate court is prevented from addressing matters such as balancing probative value and prejudice. *See Egan v. Butler*, 290 Va. 62 (2015) (in reversing judgment, Supreme Court weighed probative value and prejudicial effect of evidence on appeal, rejecting the alternate grounds offered by the appellee for affirmance under the right for the wrong reason doctrine).

III. The Evidentiary Error Was Not Harmless

For many of the same reasons already noted, we reject any notion that the error below was harmless. We *know* that the factfinder relied on the improper, collateral evidence and did so for an impermissible purpose.[16] The factfinder specifically indicated that the extrinsic photos tipped the scales against the accused, stating, "it really had an impact on the court as far as credibility goes."[17] *See, e.g.*, *Commonwealth v. Swann*, 290 Va. 194, 201 (2015) (holding that improperly admitted hearsay evidence was not harmless error because the Supreme Court could not "say with fair assurance that the jury was not substantially influenced" by the evidence); *Jennings v. Commonwealth*, 65 Va. App. 669, 681 (2015) (finding that error was not harmless where the erroneously admitted testimony established an essential element of the charged offenses). Given our knowledge that the error directly affected the verdict, we cannot conclude that the error was harmless. To the contrary, by the factfinder's own account, it had a significant impact on the verdict and necessitates a retrial. Thus, we reverse Carolino's conviction.[18]

---

[16] The Commonwealth argues that if its alternate grounds are accepted, then the whipping evidence can be presumed to be admissible for a limited, permissible purpose—but we know this hypothetical justification does not accurately portray how the evidence *actually was used*. The evidence was not introduced by the Commonwealth for the limited purpose of explaining Ford's delayed reporting or her state of mind or the relationship of the parties. It was admitted—*and considered*—only for credibility. Any suggestion that the collateral evidence was considered for a proper purpose, accordingly, is flatly rebutted by the record.

[17] We are cognizant that in a bench trial we can presume that the court relied upon challenged evidence for a proper purpose, *unless the record provides otherwise*. *Castillo v. Commonwealth*, 21 Va. App. 482, 491-92 (1995); *Wilson v. Commonwealth*, 16 Va. App. 213, 223 (1993). Here, the record reveals that the improper evidence was considered improperly under *McGowan* and it did affect the verdict.

[18] We note that "[w]hen a reviewing court reverses an appellant's conviction, it must also address the appellant's challenge to the sufficiency of the evidence underlying that conviction 'to ensure that a retrial on remand will not violate double jeopardy principles.'" *Barney v. Commonwealth*, 73 Va. App. 599, 612 (2021) (quoting *Wilder v. Commonwealth*, 55 Va. App. 579, 594 (2010)). Here, appellant has not demonstrated that the evidence is insufficient to support a conviction on remand. A remand is the appropriate remedy, and this outcome poses no double jeopardy concerns.

IV. Waiver Considerations

The dissent raises waiver as a means of preserving the conviction. We find that defense counsel adequately preserved his objection to the Commonwealth's improper and prejudicial use of collateral propensity evidence to rebut Carolino's testimony. When the Commonwealth first raised the whipping, defense counsel argued that the incident focused on bad acts and propensity evidence. The defense further noted that the whipping incident did not have "anything to do with this," was remote, irrelevant, and beyond the scope of direct—*i.e.*, collateral. Counsel argued that a consensual whipping was not relevant to the alleged strangulation and that an undesired whipping would be propensity evidence. Thus, in context, Carolino argued that, however the whipping was characterized, it was not admissible. Defense counsel's objection to the propensity and bad acts evidence plainly encompassed the prejudicial nature of such evidence. *See Mason v. Commonwealth*, 14 Va. App. 609, 614 (1992) (ruling that the character of the objection was clear in context). The trial court nonetheless admitted the propensity evidence.

Moreover, defense counsel objected when the whipping incident was first raised—noting that it was beyond the scope of direct testimony and that the prosecution was "going into prior bad acts, which he -- he's not allowed to -- to get into." The prosecution moved to another line of inquiry and then sought to introduce the pictures of Ford's post-whipping injuries. Defense counsel immediately objected again that the evidence was irrelevant propensity evidence. When the Commonwealth introduced the photos into evidence as Exhibit 2, defense counsel again objected and the court admitted the propensity evidence stating, "note [defense counsel's] exception." It merits mention, in this context, that the Commonwealth's brief en banc does not contain the word waiver, nor does it mention Rules 5A:18 and 5A:20(c), relied upon by the dissent. At oral argument, waiver was not embraced by the Commonwealth. (*See e.g.*, Oral

Argument 58:15-20).  Nor did a waiver reference arise in the Commonwealth's brief to the initial panel.  Waiver was not mentioned as a basis for granting a rehearing in the Commonwealth's petition either.  We conclude that Carolino's objection was sufficient to put the trial court and the Commonwealth on notice of Carolino's argument.

The same is true of Carolino's assignment of error.  *Cnty. of Bedford v. City of Bedford*, 243 Va. 330, 334 (1992) (An assignment of error is sufficient if the Court can "construe the essence" of the error assigned.).  While the assignment did not expressly reference *McGowan*, it raised the propensity, relevance, prejudice, and inadmissibility issues underlying this appeal.  Again, the Commonwealth has not argued otherwise.

The dissent suggests that the Commonwealth is placed in an unfair position by being asked to establish the admissibility of the propensity evidence in this procedural posture.  However, the proponent of evidence always bears the burden of establishing its relevance.  *Canada v. Commonwealth*, 75 Va. App. 367, 377 (2022).  At trial, the only basis upon which the Commonwealth offered the propensity evidence was a collateral one.  *McGowan*, 274 Va. at 695 (propensity evidence which relates to a separate incident for which the defendant is not currently standing trial and which was not introduced "for any purpose other than impeachment of the defendant, is certainly collateral to the main issue").  Collateral facts analysis presents an issue of relevancy.  *See Seilheimer v. Melville*, 224 Va. 323, 327 (1982).  The lack of relevance and the collateral nature of the propensity evidence is precisely what defense counsel objected to in arguing that the whipping incident did not have "anything to do with this," was irrelevant, and constituted inadmissible prior bad acts evidence.  *See Simpson*, 13 Va. App. at 608 ("By definition, collateral evidence is inadmissible over an objection.")  We find that Carolino's trial objection and assignment of error appropriately preserved his position.

- 25 -

CONCLUSION

This case falls squarely within the holding of the Supreme Court's *McGowan* decision. The trial court erred in admitting collateral prior bad acts evidence in rebuttal solely to impeach Carolino's credibility regarding issues raised by the Commonwealth on cross-examination of the accused. We decline to uphold the conviction under the right for the wrong reason doctrine. And because the record reveals a strong probability that the error below did affect and taint the verdict, we reject claims that the error could be deemed harmless. Accordingly, we reverse the judgment of the trial court and remand the case for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*

Fulton, J., with whom Decker, C.J., Beales, O'Brien, AtLee, Athey and White, JJ., join, dissenting.

I respectfully dissent from the majority's conclusion that the trial court erred in admitting the evidence of the whipping incident. I would hold, first, that the arguments relied upon by the majority in reversing the trial court were waived pursuant to Rules 5A:18 and 5A:20(c). Considering the merits of the case, I would hold that the evidence of the 2018 whipping incident was a prior bad act admissible in the Commonwealth's case-in-chief as evidence of the nature of the relationship between Carolino and Ford, to prove lack of consent to the strangulation, and to explain Ford's delayed report of the strangulation. Accordingly, it is not "collateral to the main issue," *McGowan v. Commonwealth*, 274 Va. 689, 695 (2007), and was properly admitted into evidence at trial.[19]

---

[19] The majority remarks that the question of whether the whipping incident was consensual is unresolved. I disagree. When considering the evidence on appeal, we must do so in the "light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (*en banc*) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en banc*)). Viewed in the light most favorable to the Commonwealth, the evidence showed that the prior whipping incident was not consensual. Moreover, the trial court stated in pronouncing its verdict:

> I have the defendant saying . . . a pretty remarkable statement on cross-examination that he had never been physical with her. And then I see Commonwealth's Exhibit 2, which is not a subtle antithesis of that. . . . Inexplicable circumstances where they can't be disputed. He was physical with her. . . . [I]t really had an impact on the court as far as credibility goes.

It is clear from the trial court's own statements that it found the whipping to be nonconsensual.

- 27 -

ANALYSIS

I. Waiver under Rule 5A:18

Relying on the Supreme Court's holding in *McGowan*, the majority holds that the trial court erred in admitting evidence of the whipping incident because it was extrinsic evidence of a collateral matter, which may not be used solely to impeach a witness's credibility. Although Carolino argued on brief to this Court that the extrinsic evidence of the whipping incident "was collateral to the main issue in this case," and thus barred by *McGowan*, he did not make that argument to the trial court and it is not encompassed by his assignments of error. Thus, I would hold that we are barred from considering this argument on appeal.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "The purpose of the contemporaneous objection rule 'is to avoid unnecessary appeals by affording the trial judge an opportunity to rule intelligently on objections.' For the circuit court to rule intelligently, the parties must inform the circuit court 'of the precise points of objection in the minds of counsel.'" *Maxwell v. Commonwealth*, 287 Va. 258, 264-65 (2014) (first quoting *State Highway Comm'r v. Easley*, 215 Va. 197, 201 (1974); and then quoting *Gooch v. City of Lynchburg*, 201 Va. 172, 177 (1959)).

Carolino's testimony on direct examination was that while he and Ford had argued, they had "made up" and engaged in voluntary sexual activity but that he "did not choke her" that night. On cross-examination, Carolino was first asked whether he had previously "been physical with [Ford]." Without objection, Carolino responded that he had not been physically aggressive

- 28 -

with Ford, but had been sexually aggressive with her. When the Commonwealth clarified, "[n]ever been aggressively physical with her?," Carolino objected that "my question on direct was specific to that night" and the Commonwealth's question was "outside of the scope of the direct examination" and that the Commonwealth was "going into prior bad acts, which . . . he's not allowed to . . . get into."

When the Commonwealth attempted to show Carolino photographs of Ford's injuries from the whipping incident, Carolino objected, arguing:

> This is an incident that occurred a year prior to the date of offense in this case. . . . Ford, in her . . . statement, addressed this issue and even said it was consensual, so I don't think it's relevant or has anything to do with this. He's trying, once again, to bring in prior bad acts. He's trying to get in propensity evidence.

After the Commonwealth questioned Carolino about the photographs, Carolino objected to their introduction "because, once again, it's a relevancy issue." The court deferred its ruling at that point, stating that it did not "know what this is about[.] . . . He needs to answer the question so that I know what we're talking about. All I know is that you showed him some pictures that I haven't seen." The Commonwealth further questioned Carolino about the photographs and the whipping incident and, when it attempted to introduce the photos, Carolino again objected, stating "my objection would be it's not relevant. He's trying to bring in a prior bad act from a year prior to this incident." Carolino then explained that "She told me to whip her" and that the photos depicted the result. He explained that "I've never been with a girl like [Ford] before and . . . she had begged me to do something to her sexually that she . . . she wanted me to do and I did it, sir."

Following Carolino's testimony, Ford was called as a rebuttal witness to testify about the whipping incident. Ford testified about the whipping incident and identified the photographs, without objection from Carolino. During Ford's rebuttal testimony, the trial court stated: "I'm a

little confused by your answer. Was that [whipping incident] part of a consensual act?" Ford responded: "No, it was not." Prior to that clarification by Ford, it was not clear from the record, or to the trial court, that the whipping incident was a prior *bad* act—a nonconsensual act. Yet once the act was finally established as "bad," Carolino never objected to its admission into evidence.

At no point did Carolino object to evidence pertaining to the whipping incident on the grounds set forth in *McGowan* and relied upon by the majority: that the Commonwealth was improperly using extrinsic evidence of a collateral issue to impeach Carolino's credibility. Instead, Carolino's objections were limited to: beyond the scope of direct examination; lack of relevance; and that it was propensity evidence. Neither an appellant nor an appellate court should "put a different twist on a question that is at odds with the question presented to the trial court." *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999); *see Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010) (explaining that "a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection" "at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error"); *Clifford v. Commonwealth*, 274 Va. 23, 25 (2007) ("[A]n appellate court may not 'recast' an argument made in a lower court into a different argument upon which to base its decision."). Having failed to make the specific objection upon which he now relies in a timely manner, Carolino deprived the trial court of the opportunity to rule intelligently on the question of whether the whipping incident evidence was improper extrinsic evidence of a collateral issue being used for impeachment. Thus, I would conclude that it is waived on appeal.[20]

---

[20] The majority, stating, "we confront a situation where no basis was provided by the Commonwealth in the trial court for why the whipping evidence might have been admissible in its case-in-chief," improperly places the burden on the Commonwealth to respond to an objection not raised by Carolino. Although the primary purpose of the contemporaneous objection rule is to allow the trial court to correct and address error, avoiding unnecessary appeals, "[a] perhaps

## II.  Waiver under Rule 5A:20(c)

I would further hold that consideration of Carolino's arguments pertaining to whether the evidence of the whipping incident was improperly admitted as extrinsic evidence of a collateral issue used solely for impeachment was waived pursuant to Rule 5A:20(c) as they are not encompassed by his assignments of error.  "Rule[] . . . 5A:20(c) require[s] us to hold that this issue is waived because it was not part of appellant's assignment of error . . . on brief."  *Simmons v. Commonwealth*, 63 Va. App. 69, 75 n.4 (2014).

Consistent with his argument before the trial court, Carolino assigns error to the admission of evidence regarding the whipping incident "inasmuch as the prior act was previously described as consensual, was not relevant to the trial, was prejudicial and was inadmissible as propensity evidence contrary to the Rules of Evidence."  Because Carolino's assignment of error addresses the same objections made to the trial court, and not those argued in his brief and relied upon by the majority pertaining to the use of extrinsic evidence of a collateral issue to impeach a defendant, I would hold that this argument was not encompassed by this assignment of error.  "This Court is limited to reviewing the assignments of error presented by the litigant," and "we do not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error."  *Banks v. Commonwealth*, 67 Va. App. 273, 289-90 (2017).  I would, therefore, conclude that Carolino's failure to assign error pertaining to this argument results in a waiver.

## III.  Merits

Carolino asserts on appeal that the trial court erred in allowing Ford to testify about the 2018 incident and in admitting photographs of her injuries from that time.  He contends that the evidence

more compelling reason for the rule is that it is unfair to the opposing party, who may have been able to offer an alternative to the objectionable ruling, but did not do so, believing there was no problem."  *Lee v. Lee*, 12 Va. App. 512, 514 (1991) (*en banc*).

was irrelevant and inadmissible to prove a prior bad act and that no exception to the rule against propensity evidence applied. I disagree; evidence of the prior whipping was relevant to show "the conduct or attitude of the accused toward his victim," as well as nature of the "the relationship between the parties." *Moore v. Commonwealth*, 222 Va. 72, 76 (1981). Further, the whipping evidence helped to explain why Ford was initially reluctant to report the offense at issue. *See Morse v. Commonwealth*, 17 Va. App. 627, 632 (1994) (wife's submission to husband's sexual demands in marital rape case could bear upon the defense of consent and, thus, "the prior relations of the couple showed the victim's state of mind 'as to why she did what she did'" (citing *Scott v. Commonwealth*, 228 Va. 519, 527 (1984))). The whipping evidence, therefore, was not collateral to this case.

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "Of course, an error of law, 'by definition,' constitutes an abuse of discretion." *Bennett v. Commonwealth*, 69 Va. App. 475, 485 (2018) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)). "In conducting *de novo* review of a legal issue, the appellate court defers to any factual findings underpinning it, including the credibility of the witnesses, and may reverse them only if they are plainly wrong." *Id.* "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

"Generally, evidence of an accused's other criminal acts is 'inadmissible to prove guilt of the crime for which the accused is on trial.'" *Kenner v. Commonwealth*, 71 Va. App. 279, 289 (2019) (quoting *Gonzales v. Commonwealth*, 45 Va. App. 375, 380 (2005) (*en banc*)), *aff'd*, 299 Va. 414 (2021). "The policy underlying the exclusion of such evidence protects the accused against unfair prejudice resulting from the consideration of prior criminal conduct in determining guilt." *Id.*

- 32 -

(quoting *Sutphin v. Commonwealth*, 1 Va. App. 241, 245 (1985)).  Nevertheless, "other crimes evidence is admissible when it 'shows the conduct or attitude of the accused toward his victim[;] establishes the relationship between the parties[;] or negates the possibility of accident or mistake[]'; or shows motive, method, intent, plan or scheme, or any other relevant element of the offense on trial." *Ortiz v. Commonwealth*, 276 Va. 705, 714 (2008) (alterations in original) (quoting *Moore*, 222 Va. at 76); *see also* Va. R. Evid. 2:404(b) (evidence of "other crimes" is admissible when "relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan").  This list "is not exclusive." *Lambert v. Commonwealth*, 70 Va. App. 740, 750 (2019).  "Virginia law 'follows an "inclusionary approach" to the uncharged misconduct doctrine by admitting such evidence "if relevant, for *any purpose* other than to show a mere propensity or disposition on the part of the defendant to commit the crime."'" *Id.* (emphasis added) (quoting *Castillo v. Commonwealth*, 70 Va. App. 394, 415 (2019)).  The test is whether "the legitimate probative value" of the evidence "outweighs the incidental prejudice to the accused." *Pierce v. Commonwealth*, 50 Va. App. 609, 615 (2007) (quoting *Woodfin v. Commonwealth*, 236 Va. 89, 95 (1988)).

The evidence that Ford had acquiesced to a beating so severe as to result in the injuries reflected in the photos, and yet remained in a relationship with Carolino, sheds significant light on the nature of the relationship between the parties and was relevant to explain Ford's delay in reporting the incident to the police and also why she told Mendez the redness in her eyes resulted from allergies.  She was afraid of and intimidated by Carolino due to the nature of their abusive relationship.  This evidence helps explain Ford's delayed report, her explanation to Mendez about the petechia in her eyes, her initial complaint to Carolino's probation officer, and her decision to spend the night in the company of the man who had just strangled her. *See Morse*, 17 Va. App. at 632 (wife's submission to husband's sexual demands in marital rape case could bear upon the

- 33 -

defense of consent and, thus, "the prior relations of the couple showed the victim's state of mind 'as to why she did what she did'" (citing *Scott*, 228 Va. at 527)).  Thus, both the delayed reporting of the strangulation and Ford's equivocation concerning whether she consented to the whipping were relevant in that they: (1) reflect the nature of the relationship; (2) illustrate Ford's tendency to respond to Carolino's aggression with resigned submission; (3) help explain her actions post strangulation; and (4) support her credibility.  As the trial court surmised, "[i]t was punishment for some act that she did.  I guess that's where the complexities of the relationships [sic] come in . . . . Inexplicable circumstances where they can't be disputed."

Moreover, Ford's explanation for why she capitulated to Carolino's whipping bore upon the element of consent to the strangulation.  *See Morse*, 17 Va. App. at 632.  Carolino admitted that he was sexually aggressive with Ford and said Ford *asked* him to whip her.  Carolino's testimony implied that any strangulation would have been consensual.  The prior bad acts evidence was also relevant as the Commonwealth was required to prove that Carolino, "without consent," impeded Ford's "blood circulation or respiration" by "knowingly, intentionally, and unlawfully applying pressure to [her] neck."  Code § 18.2-51.6.  At trial, Carolino denied strangling Ford and explained that, although they argued at dinner, they did not fight when they returned to his condo and, instead, stayed together for "the entirety of the night and up to two to three hours the following morning." Carolino's testimony differed materially from Ford's testimony, and he called her version of events into account.  Therefore, the Commonwealth's inquiry as to whether Carolino had ever been physically aggressive with Ford, along with the photographs of Ford's injuries from the 2018 incident, were relevant and admissible to prove Carolino's "conduct or attitude" toward Ford, the acrimonious nature of their relationship, and the nonconsensual characteristic of the April 2019 encounter.

Furthermore, the 2018 whipping incident was not so remote in time as to negate its probative value. Ford and Carolino started dating in April 2018 and lived together for less than a year before finally breaking up in May 2019. The prior incident occurred in the summer of 2018, near the beginning of their relationship, and the strangulation occurred in April 2019, near the end of their relationship. Thus, the prior incident was less than a year old at the time of the instant offense and not so remote in time as to render the evidence nonprobative of Carolino's conduct and attitude toward Ford, or the acrimonious nature of their relationship. Further, remoteness alone would not "render such evidence incompetent," where the act was accomplished in a "comparatively recent period" and was "apparently inspired by one purpose." *Ortiz*, 276 Va. at 714-15 (quoting *Moore*, 222 Va. at 77).

Finally, having determined the relevancy of the prior bad acts evidence, we now consider whether their legitimate probative value outweighs their prejudicial effect. Va. R. Evid. 2:404(b); *Kenner*, 299 Va. at 427. "The responsibility for balancing the two considerations rests in the trial court's discretion and we will not disturb the court's determination in the absence of a clear abuse of discretion." *Kenner*, 299 Va. at 427. "[R]elevant evidence will only be excluded if its prejudicial nature *substantially* outweighs its probative value." *Conley v. Commonwealth*, 74 Va. App. 658, 673 (2022). In order to be considered unfairly prejudicial and subject to exclusion, "the nature of the evidence must be such that it generates such a strong *emotional* response that it is unlikely that the [fact finder] could make a *rational* evaluation of its proper evidentiary weight." *Fields v. Commonwealth*, 73 Va. App. 652, 673 (2021). The fact finder in this case was the trial judge.

> [A] trial judge, sitting as the fact finder in a bench trial, "is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments." As a result, we presume that a trial judge has "separate[d], during the mental process of

adjudication, the admissible from the inadmissible, even though he
has heard both."[21]

*Adjei v. Commonwealth*, 63 Va. App. 727, 739 (2014) (quoting *Lebron v. Commonwealth*, 58

Va. App. 540, 551 (2011)).  The photographs depicting Ford's injuries, though disturbing, are

neither gory nor graphic.  Particularly whereas they were considered only by a judge sitting as the

fact finder, we do not find them so inflammatory as to outweigh their probative value to the

Commonwealth's case.  Further, to the extent that the injuries depicted in the photographs are

"graphic," these graphic images actually serve to accurately reflect the severity of the whipping.

*See Goins v. Commonwealth*, 251 Va. 442, 459 (1996) ("Photographs and videotapes of crime

scenes are admissible to show motive, intent, method, malice, premeditation, and the atrociousness

of the crime.  If the photographs accurately depict the crime scene, they are not rendered

inadmissible simply because they are gruesome or shocking." (citations omitted)).

Ford's testimony, and the corroborating photographs, of the whipping incident were also

relevant to impeach Carolino's denial that he had ever been physically aggressive with her.

"Evidence that relates to a separate offense for which the defendant is not currently standing trial,

and which cannot be used[22] for any purpose other than for impeachment of the defendant, is . . .

collateral to the main issue" in the case and thus is inadmissible.  *McGowan*, 274 Va. at 695; *see*

*also Bunting v. Commonwealth*, 208 Va. 309, 314 (1967) ("Evidence of collateral facts or those

---

[21] The majority appears to ignore this presumption in reaching its conclusion that the trial court "was not given a chance to limit the prejudice associated with the whipping evidence by restricting how much of the evidence, if any, was admissible."

[22] The majority states that *McGowan* prohibits the introduction of other bad acts evidence "which was not *introduced* 'for any purpose other than impeachment of the defendant.'" (Emphasis added.)  However, *McGowan*'s analysis turns not on the *admission* of the evidence for another purpose, but rather the *admissibility* of the evidence for what would be any appropriate or legitimate purpose.  The majority's holding inappropriately extends McGowan's prohibition against the introduction of other bad acts evidence to include circumstances where the bad acts evidence would be otherwise admissible for another appropriate or legitimate purpose.

incapable of affording any reasonable presumption or inference on matters in issue, because too remote or irrelevant, cannot be accepted i[nto] evidence."). I disagree with the majority's conclusion that the prior bad acts evidence was collateral to the strangulation charge for which Carolino was on trial. On the contrary, it was admissible in the Commonwealth's case-in-chief to prove the nature of the relationship between Ford and Carolino, the lack of consent, and to explain the one-month delay in reporting the strangulation. "[T]he Commonwealth . . . is entitled to prove its case by evidence that is relevant, competent and material. [A]n accused cannot . . . require the Commonwealth to pick and choose among its proofs, to elect which to present and which to forego." *Boone v. Commonwealth*, 285 Va. 597, 600 (2013) (all but first alteration in original) (quoting *Pittman v. Commonwealth*, 17 Va. App. 33, 35 (1993)). Because the prior bad acts evidence was not collateral, it was permissible for the Commonwealth to use extrinsic evidence of those acts to impeach Carolino's credibility.

In sum, because both the testimony of Ford and the photographic evidence pertaining to Carolino's prior bad act toward Ford was relevant and admissible, and because its probative value outweighed any prejudice to the accused, the trial court did not abuse its discretion in admitting it at trial.

IV. Applicability of Right Result Wrong Reason Doctrine

Because I conclude that the whipping evidence is not "collateral," but material, *McGowan* does not preclude its use for impeachment. Thus, the "right-for-the-wrong-reason doctrine" need not be considered in this case. Nevertheless, because the doctrine is addressed extensively by the majority, I feel it is necessary to likewise address some concerns about the majority's application of the right result for the wrong reason doctrine.

The majority remarks that because

> the trial court did not make any finding that the evidence of the
> whipping had any independent relevance other than with respect to
> credibility . . .[,] the trial court . . . never balanced the probative value
> of the whipping incident against its prejudicial impact with respect to
> any of the newly-raised grounds advocated by the Commonwealth.

"The absence of any balancing analysis or factual findings resolving the competing versions of the underlying whipping incident," the majority continues, "makes application of the right for the wrong reason doctrine problematic here."[23]

As an initial matter, I note that "[t]he trial court is presumed to know and correctly apply the law 'absent clear evidence to the contrary in the record.'" *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022) (quoting *Milam v. Milam*, 65 Va. App. 439, 466 (2015)). Furthermore, "[i]n Virginia, a trial court has no common law duty to explain in any detail the reasoning supporting its judgments. Absent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'"[24] *Pilati v. Pilati*, 59 Va. App. 176, 180 (2011) (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)). As a general rule, "[a]ll relevant evidence is admissible." Va. R. Evid. 2:402. "Relevant evidence may be excluded if . . . the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice." Va. R. Evid. 2:403(a)(i). Thus, although not articulated on the record, it is simply inaccurate to conclude that the trial court did not conduct a probative value versus prejudice balancing test. *See Juniper v.*

---

[23] By disregarding the glaring waiver issues in this case, the majority's reasoning places the trial court and the Commonwealth in a no-win situation. Because Carolino did not preserve his objections to this evidence on the basis which he now asks us to consider, and never once objected to the admission of the whipping evidence on the ground that its prejudicial nature substantially outweighs its probative value, the trial court was not asked to conduct, and the Commonwealth not asked to argue, the balancing test the majority now challenges as both necessary and absent.

[24] This is so even when, as the majority terms it, the trial court must undertake "rigorous analysis and balancing . . . to fulfill its gatekeeper function."

*Commonwealth*, 271 Va. 362, 412 (2006) ("In determining whether relevant evidence should be admitted, the trial court must apply a balancing test to assess the probative value of the evidence and any undue prejudicial effect of that evidence. The determination to admit such relevant evidence rests within the trial court's sound discretion and will be disturbed on appeal only upon a showing of an abuse of discretion.").

Even if the trial court had failed to conduct the prejudice versus probative balancing test here, I disagree with the majority's conclusion that such a failure would bar this Court from considering the right result for the wrong reason and weighing the probative value of the whipping evidence versus its prejudicial impact ourselves, so long as "the evidence in the record supports the new argument on appeal, and the development of additional facts is not necessary." *Perry v. Commonwealth*, 280 Va. 572, 579 (2010).[25] Because, contrary to the majority's assertion, the trial court clearly resolved the question of the nonconsensual nature of the whipping incident in favor of the Commonwealth, the record is complete. Therefore, if it were necessary to conduct a right for the wrong reason analysis, such an analysis would be permissible. The facts necessary to weigh whether the whipping evidence was unfairly prejudicial to Carolino are amply expounded in the record, permitting us to conduct the balancing test and apply the right result for the wrong reason doctrine.

The majority appears to assert that by weighing the probative value versus prejudicial impact ourselves on appeal to consider whether the trial court reached the right result for the wrong

---

[25] The majority cites *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008), for the proposition that "the Court of Appeals should not have engaged in its own balancing of probative value against prejudicial effect, but should have remanded to the trial court to perform this balancing." However, the Court of Appeals' error in that case was "in concluding that the District Court applied a *per se* rule" to exclude evidence. *Id.* at 383. Indeed, the Supreme Court held that the Court of Appeals erred when it "did not accord the District Court the deference we have described as the 'hallmark of abuse-of-discretion review.'" *Id.* at 384 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)). This observation is equally applicable to the majority's review in this case.

reason, we would impermissibly invade the province of the trial court. Yet none of the cases cited by the majority stand for the proposition that, where the record is complete, we cannot consider alternate grounds for admissibility of evidence. To the contrary, our caselaw reflects numerous occasions where this Court and the Supreme Court considered alternate grounds of admissibility in applying the right result for the wrong reason doctrine. For example, in *Egan v. Butler*, 290 Va. 62 (2015), the Supreme Court reversed the trial court's ruling excluding evidence of Butler's past employment history and quality of his job performance as irrelevant. In declining to affirm the trial court on the alternative ground that admissibility would be more prejudicial than probative under the right result for the wrong reason doctrine, the Court weighed the probative value of the excluded evidence versus the danger of unfair prejudice. *Id.* at 72. Weighing the evidence, the Court concluded that "[a]ny prejudice . . . arising from this excluded evidence which tends to more accurately establish Butler's future lost income, is not unfair prejudice such that its admission could properly be barred under Virginia Rule of Evidence 2:403(a)." *Id.* at 72-73. In *Marsh v. Commonwealth*, 32 Va. App. 669 (2000), we examined the record to determine the reliability of evidence, a role typically left to the trial court. There, we held that "the trial court erred in finding that the voice exemplar was testimonial in nature requiring appellant to be subjected to cross-examination under oath," but, applying the right result for the wrong reason doctrine, concluded that "the trial court did not abuse its discretion in excluding the voice exemplar" because the record lacked any evidence "establish[ing] the reliability of the voice exemplar appellant sought to introduce." *Id.* at 681-84. *See also Collins v. Commonwealth*, 297 Va. 207, 212 n.1, 219 (2019) (holding that under the "right-result-different-reason doctrine," the Court could consider for the first time on appeal whether the good faith exception to the exclusionary rule applied, requiring the Court to evaluate "what factual circumstances provided either clarity or ambiguity to [the officer] in his presumed reliance upon that law"). As these cases illustrate, where the record is complete, as it

is here, we need not hesitate to consider alternate grounds for admissibility of evidence in applying the right result for the wrong reason doctrine.

## CONCLUSION

I would hold that Carolino's arguments pertaining to the use of extrinsic evidence of allegedly collateral issues to impeach him are waived as he failed to make a timely and specific objection in accordance with Rule 5A:18 and likewise his arguments are not encompassed by the assignments of error in accordance with Rule 5A:20(c). I would further hold the trial court did not abuse its discretion in admitting the evidence of prior bad acts in this case, as that evidence was relevant to prove Carolino's attitude and conduct toward Ford, the nature of their relationship, the nonconsensual nature of the offense, and to explain the delayed report. The prior bad acts evidence, thus, was not "collateral to the main issue" in this case, and the trial court did not err in allowing the Commonwealth to introduce evidence of those acts to impeach Carolino.

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **31st** *day of* **January, 2023**.

Patrick Austin Carolino,                                                                                          Appellant,

 against                    Record No. 1270-21-1
                              Circuit Court No. CR19-2558

Commonwealth of Virginia,                                                                                  Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Decker, Judges Beales, Huff, O'Brien, AtLee, Malveaux, Athey, Fulton, Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins and White

On January 12, 2023 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on December 29, 2022, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. An electronic version of each brief shall be filed with the Court and served on opposing counsel.[1]

A Copy,
Teste:

A. John Vollino, Clerk

*original order signed by a deputy clerk of the*
By:    *Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Malveaux, Fulton and Friedman
Argued at Norfolk, Virginia


PATRICK AUSTIN CAROLINO

v.        Record No. 1270-21-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE FRANK K. FRIEDMAN
DECEMBER 29, 2022


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge

Richard C. Clark, Senior Assistant Public Defender, for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


This case involves an alleged physical attack at the end of a somewhat stormy romantic

relationship.  The appeal focuses on whether a prior alleged incident of physical abuse earlier in the

relationship was admissible and relevant to shed light on the later attack.  Patrick Austin Carolino

was convicted in the City of Virginia Beach Circuit Court on one count of strangulation, in violation

of Code § 18.2-51.6.  On appeal, Carolino argues that the trial court erred in admitting evidence

pertaining to a prior bad act that occurred between him and the victim, and he asserts that the

evidence was insufficient to prove the offense.

## BACKGROUND

### The Commonwealth's Evidence

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Gerald v. Commonwealth*,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (*en banc*) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en banc*)).

So viewed, the evidence established that Carolino and Hannah Ford were in a romantic relationship beginning in April 2018 and ending in May 2019. Carolino and Ford lived together from May 2018 until February 2019. On April 15, 2019, the two went out to dinner and began to argue. After dinner, Ford drove to the condo Carolino shared with a friend, Robert Mendez, and they both went to Carolino's bedroom. Ford was on the bed as they continued to argue, and she told Carolino she felt hopeless about their relationship. Carolino angrily got onto the bed with Ford and put his hand around her neck. With his other hand, Carolino pressed onto the back of her head "pushing it into the ground." Ford struggled to breathe and asked Carolino to stop. She thought she might pass out or die. As Carolino continued to apply pressure to Ford's neck, he asked, "do you see what it feels like to die?" Ford could not breathe for approximately fifteen to twenty-five seconds. She felt pressure in her head and had spotted vision, but she did not lose consciousness.

After the incident, Ford stayed with Carolino overnight and did not end their relationship. She did not report the incident to the police until a month later. Ford explained that she delayed reporting the strangulation to police because she still cared for Carolino. But she also "was scared to report anything."

The morning after the incident, Ford noticed that she had popped blood vessels in her eye and photographed her injuries. These photos were later introduced into evidence at trial. Ford also noticed that her neck was very tender and her throat was sore. She had difficulty swallowing, and her voice was affected. Ford went to work and discussed the incident with her manager, who

testified that on the day after the incident Ford was "visibly distraught" and her eyes were red "like the blood vessels had been popped." Her manager notified security at their workplace that there was a possibility someone might come by who could be a danger to them.

Mendez was Carolino's roommate between February and April of 2019. Mendez testified that, at the time of the incident, Ford's eyes "looked as if they were allergies or bloodshot, maybe a broken blood vessel." When he asked her about it, she told him she had allergies. Mendez also noted that Carolino told him, around this time frame, that Ford would know how to respond in self-defense if she were ever placed in a chokehold.

Ford ultimately reported the choking incident to Carolino's probation officer on May 17, 2019. She initially called to report him for violating his probation generally; however, after they met in person, Ford disclosed the choking incident.

Jennifer Knowlton, a sexual assault nurse examiner with Chesapeake Forensic Specialists, was qualified as an expert in "the signs and symptoms of strangulation." Knowlton testified that some of the typical signs and symptoms of strangulation are soreness in the neck area, pain or difficulty swallowing, and petechia and subconjunctival hemorrhages in the eyes. On cross-examination, Knowlton acknowledged that other things could cause such symptoms, such as reactions to medications, excessive coughing, and rubbing one's eyes to alleviate allergies. Knowlton did not personally treat Ford for her injuries.

<u>Carolino's Version of Events and Attack on Ford's Credibility</u>

After the Commonwealth rested its case, Carolino made a motion to strike, arguing that Ford's testimony was unreliable. Carolino pointed out that Ford waited a month before she reported the incident, and he asserted that she was biased because she was upset that Carolino was seeing other women. The trial court denied the motion to strike.

Carolino testified that on the night of the offense he and Ford argued about the fact that he was seeing other women. He explained that when they returned to his condo, she "begged" to come inside with him "one last time." Carolino stated that Ford spent the night, but he said they did not fight. Indeed, he testified that they had sex in the evening and again in the morning and then did yoga together. Carolino denied strangling Ford or putting her in a chokehold to teach her self-defense. Carolino said Ford continued to contact him after that night and tried to interfere with his other relationships. Carolino admitted that he had two prior felony convictions.

### The Whipping Incident

Carolino testified in his own defense and denied that the strangulation incident occurred. On cross-examination, he was asked:

> Q: Ms. Ford—have you ever—you said you didn't choke her. Have you ever been physical with her?
>
> A: Aggressively physical, no. Sexually, sure. Yes.
>
> Q: Okay. Never been aggressively physical with her?

The Commonwealth then cross-examined Carolino about a prior incident between him and Ford. Carolino explained that on a prior occasion, Ford had asked to be whipped as part of a sexual act. He stated: "I've never aggressively assaulted [Ford]. I've never—I've never done anything to [her] that she didn't ask me to do or did not want me to do."[1]

The Commonwealth then called Ford as a rebuttal witness. Over Carolino's objection, Ford testified that Carolino had beaten her with a belt in the summer of 2018 after learning that she had slept with someone else. Ford admitted multiple times that she told a detective that she "allowed" or "gave" "permission" to Carolino to administer the whipping. However, later, she testified that she did not, in fact, consent to the beating. Instead, Ford explained that she resigned herself to

---

[1] Carolino qualified this statement by noting that Ford sometimes accompanied him to a jiu-jitsu self-defense class where he showed her tactics in a physical context.

- 4 -

Carolino's insistence that he wanted to hurt her for her infidelity. Ford stated, "I did allow him. I was intimidated by him because he had expressed to me repeatedly that he wanted to hurt me. And I just . . . didn't want to have to wait and see when he was going to do it."

The Commonwealth, at trial and over objection, argued this evidence was admissible to impeach Carolino's credibility. In admitting the evidence the trial court stated: "He's just testified that he's never—he's never been physical with her. . . . I'm going to allow it. I'll overrule the objection." Also, over Carolino's objection, the trial court allowed the Commonwealth to introduce graphic photographs of injuries Ford sustained in the prior incident when Carolino whipped her.[2]

<u>The Trial Judge, as Fact-Finder, Convicts Carolino of Strangulation</u>

After the defense rested, Carolino renewed his motion to strike and presented closing argument, again emphasizing that Ford waited over a month to report the choking incident to police and maintaining that she was not a credible witness. The trial court convicted Carolino of strangulation. In so ruling, the trial court specifically relied upon the prior bad act evidence as a central basis for the conviction. The court noted that this evidence "really had an impact on the court as far as credibility goes." This appeal followed.

ANALYSIS

I. <u>Evidence of Carolino's Prior Whipping of His Girlfriend was Inadmissible Solely to Impeach his Credibility</u>

A. <u>Standard of Review</u>

Carolino asserts on appeal that the trial court erred both in allowing Ford to testify about the 2018 incident and in admitting photographs of her injuries from that beating. He contends that the evidence was irrelevant and inadmissible and that no exception to the rule against propensity evidence applied.

---

[2] The photographs were admitted as Commonwealth's Exhibit 2 and show large, dark bruises on Ford's buttocks and legs.

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). To the extent an evidentiary ruling involves interpreting a statute or rule of court, such rulings are reviewed *de novo*. *Brown v. Commonwealth*, 68 Va. App. 746, 792 (2018). "Of course, an error of law, 'by definition,' constitutes an abuse of discretion." *Bennett v. Commonwealth*, 69 Va. App. 475, 485 (2018) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

"As a general rule, evidence that shows or tends to show crimes or other bad acts committed by the accused is incompetent and inadmissible for the purpose of proving that the accused committed or likely committed the particular crime charged." *Lafon v. Commonwealth*, 17 Va. App. 411, 417 (1993); *see* Va. R. Evid. 2:404(b). "The policy underlying the exclusion of such evidence protects the accused against unfair prejudice resulting from the consideration of prior criminal conduct in determining guilt." *Sutphin v. Commonwealth*, 1 Va. App. 241, 245 (1985). This general rule, however, "must sometimes yield to society's interest in the truth-finding process, and numerous exceptions allow evidence of prior misconduct whenever the legitimate probative value outweighs the incidental prejudice to the accused." *Dunbar v. Commonwealth*, 29 Va. App. 387, 390 (1999). Notwithstanding the general rule, evidence of prior bad acts is admissible:

> (1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a *modus operandi*; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part.

*Lafon*, 17 Va. App. at 417 (quoting *Sutphin*, 1 Va. App. at 245-46).  This list "is not exclusive." *Lambert v. Commonwealth*, 70 Va. App. 740, 750 (2019).

Before prior bad acts evidence is admitted, the proponent of the evidence must illustrate that "the legitimate probative value" of the evidence "outweighs the incidental prejudice to the accused."  *Pierce v. Commonwealth*, 50 Va. App. 609, 615 (2007) (quoting *Woodfin v. Commonwealth*, 236 Va. 89, 95 (1988)).

### B.  *McGowan v. Commonwealth*, 274 Va. 689 (2007), and Impeaching the Accused's Credibility

Evidence must be relevant to be admissible.  Va. R. Evid. 2:402.  "'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence."  Va. R. Evid. 2:401.  Here, the Commonwealth, over Carolino's objection, introduced evidence of the whipping for the sole stated purpose of impugning Carolino's credibility after he stated on cross-examination that he was never "aggressively physical" toward Ford.  The prosecution then called Ford in rebuttal to discuss the incident.  Photos of Ford's extensive bruising resulting from the beating were also admitted.

On appeal Carolino asserts that, under *McGowan*, evidence of the whipping could not be introduced as a prior bad act simply to impugn his credibility.  The Commonwealth counters that the evidence was properly accepted, but principally argues that the ruling to admit the evidence was "right for a different reason."  *Vandyke v. Commonwealth*, 71 Va. App. 723, 731 (2020).

*McGowan* directly addresses whether a circuit court can admit prior bad acts evidence for the sole purpose of impugning the accused's credibility in response to an issue raised by the Commonwealth on cross-examination.  In *McGowan*, a drug offense prosecution, the accused testified that at the time of the charged drug sale she "wouldn't know crack cocaine if [she] saw it." *McGowan*, 274 Va. at 693.  To impeach the accused's credibility, the Commonwealth sought to introduce evidence that the defendant had *subsequently* been arrested in possession of crack

- 7 -

cocaine. The Supreme Court found that the improper infusion of collateral "other crimes" evidence required reversal of the conviction.

The Court reasoned that collateral facts cannot be admitted into evidence and that "[t]he test as to whether a matter is material or collateral, in the matter of impeachment of a witness, is whether . . . the cross-examining party would be entitled to prove it in support of his case." *Id.* at 695 (alterations in original) (quoting *Stottlemyer v. Ghramm*, 268 Va. 7, 12 (2004)). The Court further cautioned: "Evidence that relates to a separate offense for which the defendant is not currently standing trial, and which cannot be used for any purpose other than for impeachment of the defendant, is certainly collateral to the main issue." *Id.*

The *McGowan* Court then reiterated that when a defendant is cross-examined on collateral matters, the prosecution must accept the answer provided and cannot introduce extrinsic evidence to contradict the accused:

> Under our jurisprudence . . . the cross-examiner is bound by the answer given, and cannot introduce any extrinsic evidence to otherwise contradict the witness. Thus, "the answer of the witness will be conclusive; [she] cannot be asked as to any collateral independent fact merely with a view to contradict [her] afterwards by calling another witness."

*Id.* (second and third alterations in original) (citations omitted). The Court confirmed that cross-examination regarding the collateral issue is permissible:

> [I]t is well settled that, "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." Clearly, a criminal defendant such as McGowan cannot expect to make a misleading statement to the jury without also "open[ing] the door to cross-examination for the purpose of attacking [her] credibility."

*Id.* (second, third, and fourth alterations in original) (first quoting *Harris v. New York*, 401 U.S. 222, 225 (1971); and then quoting *Santmier v. Commonwealth*, 217 Va. 318, 319-20 (1976)).

Under this governing law, we are left to determine whether the trial court properly admitted the rebuttal and extrinsic evidence relating to the 2018 whipping, and, if not, whether introduction of this evidence requires reversal.

### C. Extrinsic Evidence of the Prior Whipping Incident was Impermissibly Admitted as a Collateral Matter in the Circuit Court

In examining the ruling below, we confront a situation where no basis was provided by the Commonwealth in the trial court for why the whipping evidence might have been admissible in its case-in-chief. The testimony—and the extrinsic photographs—were offered and admitted purely for impeachment purposes. After the Commonwealth argued that Carolino's credibility is "at the very core" of the case, the following colloquy occurred prior to the court admitting the photographs to discredit his statement, on cross-examination, that he was not "aggressively physical" with Ford:

> THE COURT: He said he had never been physical with her and I don't—and these pictures apparently—
>
> I haven't seen them yet. Is it your representation that this is evidence of him being physical with her?
>
> THE COMMONWEALTH: It is, Judge.
>
> THE COURT: Okay. I'll receive them.

After viewing the photos, the trial court, in convicting Carolino, specifically commented that this whipping evidence (and particularly the photos) "really had an impact on the court as far as credibility goes."

This case closely mirrors *McGowan*. We are guided by the Supreme Court's admonition that bad acts evidence which relates to a separate incident for which the defendant is not currently standing trial and which was not introduced "for any purpose other than impeachment of the defendant, is certainly collateral to the main issue." *McGowan*, 274 Va. at 695. Further, when impeaching on a collateral matter, "the cross-examiner is bound by the answer given, and cannot introduce any extrinsic evidence to otherwise contradict the witness." *Id.* Here, Carolino's

- 9 -

challenged testimony was impeached both by testimony from a rebuttal witness and by graphic, extrinsic photographs. Moreover, the trial court stated that this improper evidence was essentially the tipping point in reaching its ultimate decision.[3]

Under these circumstances, we find that the trial court ran afoul of *McGowan* in admitting this propensity evidence for the sole purpose of attacking Carolino's credibility. This, however, does not end our inquiry. We next address the Commonwealth's vigorous contention that we should uphold the admission of the evidence—and therefore the conviction—on alternate grounds.

## II. The Commonwealth's Reliance on Alternative Grounds

The Commonwealth asserts that the disputed evidence could have been admitted—and the conviction upheld—under different reasoning than the trial court applied.[4] "We have long said that '[w]e do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground.'" *Banks v. Commonwealth*, 280 Va. 612, 617 (2010) (alteration in original) (quoting *Eason v. Eason*, 204 Va. 347, 352 (1963)). On appeal the Commonwealth offers a broad array of explanations for why the whipping incident could have been relevant in its case-in-chief had these explanations been raised in the trial court—ranging from showing intent, consent, or "state of mind," to proving "the dysfunction" of the couple's

---

[3] The Commonwealth's argument on appeal that the whipping incident itself may have been probative evidence in its case-in-chief will be addressed, *infra*. The graphic photos, however, raise different considerations than the testimony regarding the events surrounding the alleged incident—and the Commonwealth offers little basis for how introduction of the photos would have been permissible in its case-in-chief.

[4] The Commonwealth espouses the "right-for-a-different-reason" doctrine as a means of preserving the verdict. This theory is applicable in cases "where the appellate court expresses no view on the correctness of the lower court's rationale." *Vandyke*, 71 Va. App. at 731. We have addressed the lower court's rationale—specifically, its finding that the whipping evidence was admissible to impeach Carolino's credibility—and therefore instead apply the "right-for-the-wrong-reason" test, which is closely aligned to the Commonwealth's argument. *See Perry v. Commonwealth*, 280 Va. 572, 580 (2010); *Haynes v. Haggerty*, 291 Va. 301, 305 (2016).

relationship or explaining why Ford "did what she did." The Commonwealth similarly argues the whipping evidence demonstrates the defendant's "conduct or attitude" toward the victim, as well as the nature of their relationship. *See Ortiz v. Commonwealth*, 276 Va. 705, 714 (2008); *Morse v. Commonwealth*, 17 Va. App. 627, 632 (1994) (evidence of prior acts of sexual violence was admissible to show "the conduct and feeling of the accused toward the victim and the prior relations between the parties" in a prosecution for marital sexual assault).[5]

The prior acts in the cases relied upon by the Commonwealth, however, were proven to be relevant to the newly charged acts in some meaningful or probative manner. *See Guill v. Commonwealth*, 255 Va. 134, 140-41 (1998) (evidence of other acts must address a matter genuinely in dispute). The Commonwealth's contention, here, that the incident reveals "dysfunction" in the relationship suggests that any incident in the relationship is relevant simply as background information. The prosecution, however, must establish some evidentiary connection or legitimate probative value to the whipping evidence before it becomes admissible. Here, the Commonwealth fails to provide a persuasive probative link. For example, the Commonwealth's speculative suggestion that the whipping incident reveals motive or intent—that Carolino was still angry about Ford's infidelity the prior summer—is inconsistent with the record which reveals that Carolino was seeing other women on the date of the alleged choking incident, was not interested in an "exclusive" relationship, and was not dwelling on past "infidelities." Further, the Commonwealth's argument that the whipping incident was relevant to establish "consent" or state of mind is also problematic because the issue on this record is not whether the strangulation was consensual—an argument which no one asserted—but whether a strangulation actually occurred.

---

[5] *See also Burnette v. Commonwealth*, 60 Va. App. 462, 480 (2012) (evidence of a baby's prior injuries was relevant and admissible to show the defendant's "prior relationship with and feelings toward" the infant); *Conley v. Commonwealth*, 74 Va. App. 658, 672 (2022) (video evidence of prior incidents of sexual abuse was admissible to show the defendant's "conduct and attitude" toward the victim).

- 11 -

Ford claimed that she was strangled—and Carolino flatly denied the claim and challenged Ford's credibility in multiple respects.[6]

Recognizing that Ford's credibility was hotly disputed, the Commonwealth suggests that the whipping incident is relevant to show why Ford "did what she did." In essence, the prosecution argues that the delayed reporting of the whipping sheds light on her delayed reporting of the alleged choking. Again, the record does not bolster this theory because: (1) two incidents occurring many months apart do not necessarily establish a "pattern," and (2) Ford's reporting as to the two incidents was inconsistent in various significant respects. For example, Ford immediately reported the alleged strangulation to her employer the following day, although she delayed reporting it to Carolino's probation officer. By contrast, there is no evidence she discussed the whipping with anyone at the time it occurred. She never made claims that the strangulation was consensual[7]; but she did tell police the whipping was consensual:

> Q. And didn't you tell the officer that you sort of gave him permission [for the whipping]?
>
> A. I did tell her that.
>
>     . . . .
>
> THE COURT: You have to – you have to speak up.
>
> THE WITNESS: Yes. I told her that I had allowed him to do it.

Indeed, the two incidents are fairly dissimilar except to suggest Carolino's alleged propensity to physical aggression. Notably, even without the whipping evidence, Ford was permitted to explain

---

[6] For example, Carolino argues that Ford contacted his probation officer twice without mentioning the strangulation and that she waited over a month to report the incident to police. He points out that Ford spent the night with him after the incident and that she told Mendez that her eyes were red from allergies the next morning.

[7] The dissent's suggestion that "Carolino's testimony implied that any strangulation would have been consensual" is not supported by the record. He denied the incident occurred.

her delayed reporting of the alleged strangulation as attributable to her lingering feelings for Carolino and her fear of reprisal. The Commonwealth's theory of relevance as to Ford's "delayed reporting" of the whipping or "state of mind" is attenuated and offers negligible probative value, if any.[8]

The Commonwealth's difficulty in establishing an alternate basis for admitting the testimony regarding the whipping incident only increases with respect to admission of the graphic photos depicting the extensive bruising Ford suffered from the whipping. The Commonwealth offers virtually no explanation for why the post-whipping photos of Ford's injuries should have been admissible other than to corroborate that the incident occurred. The "happening" of the beating does not require corroboration, however, as no one disputes that it occurred.

Finally, the test for admissibility of bad acts evidence is tempered by the requirement that the evidence's probative value must outweigh any unfair prejudicial impact. *See Kenner v. Commonwealth*, 299 Va. 414, 427 (2021) (to admit bad acts evidence, "the legitimate probative value of the evidence must exceed its incidental prejudice to the defendant"). The photographs depicting Ford's injuries are disturbing. Prior bad acts evidence will often be prejudicial to the defendant, but the test is whether the evidence is unfairly so. *Lee v. Spoden*, 290 Va. 235, 251-52 (2015). "'[U]nfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Id.* at 251. Here, the photos were jarring and inflammatory, and they were introduced improperly. *See McGowan*, 274 Va. at 695 (rejecting tactic of impugning accused's cross-examination testimony on collateral matters with extrinsic evidence). Ultimately,

---

[8] Moreover, the Commonwealth relies on the premise that the whipping evidence is admissible for a limited permissible purpose—but we know this hypothetical justification does not accurately portray how the evidence was actually used. The evidence was not introduced by the Commonwealth for the limited purpose of explaining Ford's delayed reporting or her state of mind.

the unfair prejudicial impact of the bad acts evidence substantially outweighed any remote probative value the evidence may have had, and the bad acts evidence should have been excluded. *See, e.g.*, *Lambert*, 70 Va. App. at 745 (evidence properly excluded where it would have minimal probative value yet significant potential for confusion and undue prejudice); *Pryor v. Commonwealth*, 276 Va. 312, 316-17 (2008) (evidence excluded where its prejudicial impact greatly exceeds its probative value); *Old Chief v. United States*, 519 U.S. 172, 191 (1997) (reversing conviction based on improper admission of bad acts evidence where "the risk of unfair prejudice did substantially outweigh the discounted probative value" of the evidence).

### III. We Cannot Say the Error Was Harmless

For many of the same reasons that we find the extrinsic whipping evidence was improperly admitted, we reject any notion that the error was harmless. We *know* that the fact-finder relied on the collateral evidence. The fact-finder specifically indicated that the extrinsic photos tipped the scales against the accused, stating, "it really had an impact on the court as far as credibility goes."[9] *See, e.g.*, *Commonwealth v. Swann*, 290 Va. 194, 201 (2015) (holding that improperly-admitted hearsay evidence was not harmless error because the Supreme Court could not "say with fair assurance that the jury was not substantially influenced" by the evidence); *Jennings v. Commonwealth*, 65 Va. App. 669, 681 (2015) (finding that error was not harmless where the erroneously-admitted testimony established an essential element of the charged offenses). Given our knowledge that the error directly affected the verdict, we cannot conclude that the error was harmless. To the contrary, by the fact-finder's own account, it had a

---

[9] We are cognizant that in a bench trial we can presume that the court relied upon challenged evidence for a proper purpose, unless the record provides otherwise. *Castillo v. Commonwealth*, 21 Va. App. 482, 491-92 (1995); *Wilson v. Commonwealth*, 16 Va. App. 213, 223 (1993). Here, the record reveals that the improper evidence was considered improperly under *McGowan* and it did affect the verdict.

- 14 -

significant impact on the verdict and necessitates a retrial.  Thus, we reverse Carolino's

conviction.[10]

CONCLUSION

This case falls squarely within the holding of the Supreme Court's *McGowan* decision.  We

rule that, under *McGowan*, the trial court erred in admitting prior bad acts evidence in rebuttal solely

to impeach Carolino's credibility regarding issues raised by the Commonwealth on

cross-examination of the accused.  We cannot uphold the conviction under the

right-for-the-wrong-reason doctrine.  The Commonwealth has failed to present alternate grounds to

support admission of the whipping incident; moreover, the disputed evidence was substantially

more prejudicial than probative.  Finally, the record reveals a strong probability that the error below

did affect and taint the verdict below.  Thus, we reject claims that the error could be deemed

harmless.  Accordingly, we reverse the judgment of the trial court and remand the case for a new

trial, if the Commonwealth be so advised.

*Reversed and remanded.*

---

[10] We note that "[w]hen a reviewing court reverses an appellant's conviction, it must also address the appellant's challenge to the sufficiency of the evidence underlying that conviction 'to ensure that a retrial on remand will not violate double jeopardy principles.'" *Barney v. Commonwealth*, 73 Va. App. 599, 612 (2021) (quoting *Wilder v. Commonwealth*, 55 Va. App. 579, 594 (2010)).  Here, Carolino has not demonstrated that the evidence is insufficient to support a conviction on remand.  A retrial is the appropriate remedy, and this outcome poses no double jeopardy concerns going forward.

- 15 -

Fulton, J., concurring in part, and dissenting in part.

I respectfully dissent from the majority's conclusion that the trial court erred in admitting the evidence of the whipping incident. I would hold that the evidence of the 2018 whipping incident was a prior bad act admissible in the Commonwealth's case-in-chief as evidence of the nature of the relationship between Carolino and Ford, to prove lack of consent to the strangulation, and to explain Ford's delayed report of the strangulation. Accordingly, it is not "collateral to the main issue," *McGowan v. Commonwealth*, 274 Va. 689, 695 (2007), and was properly admitted into evidence at trial.

## ANALYSIS

Carolino asserts on appeal that the trial court erred in allowing Ford to testify about the 2018 incident and in admitting photographs of her injuries from that time. He contends that the evidence was irrelevant and inadmissible to prove a prior bad act and that no exception to the rule against propensity evidence applied. I disagree; evidence of the prior whipping was relevant to show "the conduct or attitude of the accused toward his victim," as well as the nature of the "the relationship between the parties." *Moore v. Commonwealth*, 222 Va. 72, 76 (1981). The whipping evidence, therefore, was not collateral to this case.

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "Of course, an error of law, 'by definition,' constitutes an abuse of discretion." *Bennett v. Commonwealth*, 69 Va. App. 475, 485 (2018) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)). "In conducting *de novo* review of a legal issue, the appellate court defers to any factual findings underpinning it, including the credibility of the witnesses, and may reverse them only if they are plainly wrong." *Id.* "Only when reasonable jurists could not differ can we say

- 16 -

an abuse of discretion has occurred." *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

"Generally, evidence of an accused's other criminal acts is 'inadmissible to prove guilt of the crime for which the accused is on trial.'" *Kenner v. Commonwealth*, 71 Va. App. 279, 289 (2019) (quoting *Gonzales v. Commonwealth*, 45 Va. App. 375, 380 (2005) (*en banc*)), *aff'd*, 299 Va. 414 (2021). "The policy underlying the exclusion of such evidence protects the accused against unfair prejudice resulting from the consideration of prior criminal conduct in determining guilt." *Id.* (quoting *Sutphin v. Commonwealth*, 1 Va. App. 241, 245 (1985)). Nevertheless, "other crimes evidence is admissible when it 'shows the conduct or attitude of the accused toward his victim[;] establishes the relationship between the parties[;] or negates the possibility of accident or mistake,' or shows motive, method, intent, plan or scheme, or any other relevant element of the offense on trial." *Ortiz v. Commonwealth*, 276 Va. 705, 714 (2008) (alterations in original) (quoting *Moore v. Commonwealth*, 222 Va. 72, 76 (1981)); *see also* Va. R. Evid. 2:404(b) (evidence of "other crimes" is admissible when "relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan"). This list "is not exclusive." *Lambert v. Commonwealth*, 70 Va. App. 740, 750 (2019). "Virginia law 'follows an "inclusionary approach" to the uncharged misconduct doctrine by admitting such evidence "if relevant, for *any purpose* other than to show a mere propensity or disposition on the part of the defendant to commit the crime."'" *Id.* (emphasis added) (quoting *Castillo v. Commonwealth*, 70 Va. App. 394, 415 (2019)). The test is whether "the legitimate probative value" of the evidence "outweighs the incidental prejudice to the accused." *Pierce v. Commonwealth*, 50 Va. App. 609, 615 (2007) (quoting *Woodfin v. Commonwealth*, 236 Va. 89, 95 (1988)).

The evidence that Ford had acquiesced to a beating so severe as to result in the injuries reflected in the photos, and yet remained in a relationship with Carolino, sheds significant light on

the nature of the relationship between the parties and was relevant to explain Ford's delay in reporting the incident to the police and also why she told Mendez the redness in her eyes resulted from allergies. She was afraid of and intimidated by Carolino due to the nature of their abusive relationship. This evidence helps explain Ford's delayed report, her explanation to Mendez about the petechia in her eyes, her initial complaint to Carolino's probation officer, and her decision to spend the night in the company of the man who had just strangled her. *See Scott v. Commonwealth*, 228 Va. 519, 527 (1984) (wife's submission to husband's sexual demands in marital rape case could bear upon the defense of consent and, thus, "the prior relations of the couple showed the victim's state of mind 'as to why she did what she did'"). Thus, the evidence was relevant to show the nature of the relationship and Ford's tendency to respond to Carolino's aggression with resigned submission. As the trial court surmised, "It was punishment for some act that she did. I guess that's where the complexities of the relationships [sic] come in . . . . Inexplicable circumstances where they can't be disputed."

Moreover, Ford's explanation for why she capitulated to Carolino's whipping bore upon the element of consent to the strangulation. *See Morse v. Commonwealth*, 17 Va. App. 627, 632 (1994). Carolino admitted that he was sexually aggressive with Ford and said Ford *asked* him to whip her. Carolino's testimony implied that any strangulation would have been consensual. The prior bad acts evidence was also relevant as the Commonwealth was required to prove that Carolino, "without consent," impeded Ford's "blood circulation or respiration" by "knowingly, intentionally, and unlawfully applying pressure to [her] neck." Code § 18.2-51.6. At trial, Carolino denied strangling Ford and explained that, although they argued at dinner, they did not fight when they returned to his condo and, instead, stayed together "for the entirety of the night and up to two to three hours the following morning." Carolino's testimony differed materially from Ford's testimony, and he called her version of events into account. Therefore, the Commonwealth's

- 18 -

inquiry as to whether Carolino had ever been physically aggressive with Ford, along with the photographs of Ford's injuries from the 2018 incident, were relevant and admissible to prove Carolino's "conduct or attitude" toward Ford, the acrimonious nature of their relationship, and the non-consensual characteristic of the April 2019 encounter.

Furthermore, the 2018 whipping incident was not so remote in time as to negate its probative value. Ford and Carolino started dating in April 2018 and lived together for less than a year before finally breaking up in May 2019. The prior incident occurred in the summer of 2018, near the beginning of their relationship, and the strangulation occurred in April 2019, near the end of their relationship. Thus, the prior incident was less than a year old at the time of the instant offense and not so remote in time as to render the evidence nonprobative of Carolino's conduct and attitude toward Ford, or the acrimonious nature of their relationship. Further, remoteness alone would not "render such evidence incompetent," where the act was accomplished in a "comparatively recent period" and was "apparently inspired by one purpose." *Ortiz*, 276 Va. at 714-15 (quoting *Moore*, 222 Va. at 77).

Finally, having determined the relevancy of the prior bad acts evidence, we now consider whether their legitimate probative value outweighs their prejudicial effect. Va. R. Evid. 2:404(b); *Kenner*, 299 Va. at 427. "The responsibility for balancing the two considerations rests in the trial court's discretion and we will not disturb the court's determination in the absence of a clear abuse of discretion." *Kenner*, 299 Va. at 427. "[R]elevant evidence will only be excluded if its prejudicial nature *substantially* outweighs its probative value." *Conley v. Commonwealth*, 74 Va. App. 658, 673 (2022). In order to be considered unfairly prejudicial and subject to exclusion, "the nature of the evidence must be such that it creates such a strong *emotional* response that it is unlikely that the [fact finder] could make a *rational* evaluation of its proper evidentiary weight." *Fields v. Commonwealth*, 73 Va. App. 652, 673 (2021). The fact finder in this case was the trial judge.

- 19 -

> [A] trial judge, sitting as the fact finder in a bench trial, "is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments." As a result, we presume that a trial judge has "separate[d], during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both."

*Adjei v. Commonwealth*, 63 Va. App. 727, 739 (2014) (second alteration in original) (quoting *Lebron v. Commonwealth*, 58 Va. App. 540, 551 (2011)). The photographs depicting Ford's injuries, though disturbing, are neither gory nor graphic. Particularly whereas they were considered only by a judge sitting as the fact finder, we do not find them so inflammatory as to outweigh their probative value to the Commonwealth's case.

Ford's testimony, and the corroborating photographs, of the whipping incident were also relevant to impeach Carolino's denial that he had ever been physically aggressive with her. "Evidence that relates to a separate offense for which the defendant is not currently standing trial, and which cannot be used for any purpose other than for impeachment of the defendant, is . . . collateral to the main issue" in the case and thus is inadmissible. *McGowan*, 274 Va. at 695; *see also Bunting v. Commonwealth*, 208 Va. 309, 314 (1967) ("Evidence of collateral facts or those incapable of affording any reasonable presumption or inference on matters in issue, because too remote or irrelevant, cannot be accepted i[nto] evidence."). I disagree with the majority's conclusion that the prior bad acts evidence was collateral to the strangulation charge for which Carolino was on trial. On the contrary, it was admissible in the Commonwealth's case-in-chief to prove the nature of the relationship between Ford and Carolino, the lack of consent, and to explain the one-month delay in reporting the strangulation. Because the prior bad acts evidence was not

- 20 -

collateral, it was permissible for the Commonwealth to use extrinsic evidence of those acts to impeach Carolino's credibility.[11]

In sum, because the evidence pertaining to Carolino's prior bad act toward Ford was relevant and admissible, and because its probative value outweighed any prejudice to the accused, the trial court did not abuse its discretion in admitting it at trial.

CONCLUSION

I would hold that the trial court did not abuse its discretion in admitting the evidence of the prior bad act in this case, as that evidence was relevant to prove Carolino's attitude and conduct toward Ford, the nature of their relationship, the nonconsensual nature of the offense, and to explain the delayed report. I concur with the majority that the evidence presented at trial was sufficient to support the conviction.

---

[11] Because I conclude that the whipping evidence is not "collateral," *McGowan* does not preclude its use for impeachment. Thus, the "right-for-the-wrong-reason doctrine" need not be considered.